## The Moline Plow Company v. P. A. Rodgers *et al.*

1. SALE OF GOODS—*Passing of Title—Option to Retake Goods.* A vendor who sells and delivers goods at prices and on terms of payment definitely fixed by the contract, but retains the right to elect to take the goods remaining unsold by his vendee as the property of the vendor, is not the owner of the goods until after the actual exercise of such election, and creditors of the vendee who attach such goods prior to any election by the vendor acquire a valid lien thereon.

2. ELECTION OF REMEDIES—*Conclusiveness.* Where goods are delivered by the owner to an agent, under a contract authorizing the agent to sell and retain all the proceeds over the price fixed in the contract, and also giving the owner the right at the close of the season to require payment from the agent of the price fixed for all goods de-

livered to him, and where the agent absconds and the property so in his possession is attached by his creditors, if the owner, with knowledge of these facts, commences an action against the agent for the purchase price of the goods, treating the transaction as a sale, the commencement of such action passes the title to the agent, and will prevent the owner from thereafter maintaining an action to recover the property from the sheriff holding it under writs of attachment.

### *Error from Ness District Court.*

THE plaintiff brought. this action to recover from the defendants, who are the sheriff and undersheriff of Ness county, certain agricultural implements, which had been attached under process issued against one L. H. Underwood. The property was obtained by Underwood from the plaintiff under two written contracts, one of them for the mowers alone, and the other for the other implements, consisting of plows, cultivators, harrows, corn planters, etc. The contract with reference to the mowers is one by which Underwood was appointed agent of the plaintiffs for the sale of the mowers. The contract contains the following provision:

"The above mowers, and all others ordered and sold by the second party during the season, to be settled for at above prices, on or before the September 1, 1887, with farmers' notes taken in accordance with section six of this contract, maturing, one-half not later than October 1, 1887, and one-half not later than January following: *Provided,* That the party of the second part shall have the privilege of paying all cash September 1, 1887, less a discount of 5 per cent. from above net prices on mowers. Any Knowlton mowers remaining on hand at close of season are to be settled for by notes of second party, maturing one-half October 1, 1888, and one-half January 1, 1889, or to be stored, free of charge, in accordance with section four of this contract, as the property of the Moline Plow Company, until following season. Settlement to be at the option of the party of the first part."

The other contract is an order for the goods, on terms of payment therein stated, containing also the following written clause:

"It is understood and agreed that L. H. Underwood is to remit promptly to the Moline Plow Company, at Kansas

City, Mo., all the notes and cash for goods sold; said notes to be held as security for the payment of the said Underwood's individual notes given in accordance with within contract, and said notes to be returned to the said Underwood ( or whomever the Moline Plow Company may appoint) for collection, and all goods remaining unsold at end of season to be settled for by said Underwood's individual notes, due October 1, 1888, secured (if the Moline Plow Company so direct) by farmers' notes, or said unsold goods to be stored, free of charge, as the Moline Plow Company's property. Either settlement, as above, to be wholly optional with the Moline Plow Company. And it is further understood, that all farmers' notes given by the said Underwood as security shall be replaced by good notes from other sources, if not paid within 60 days from maturity.

" In consideration of the Moline Plow Company's appointing L. H. Underwood their agent, the said Underwood agrees to neither buy nor sell any other makes of plows, cultivators or listers except those ordered herein."

These contracts were made on the 23d day of February, 1887. In the fore part of May, 1887, Underwood quit business, and left Ness City, leaving the property in care of one Grisson. On the 12th of May, an attachment in a suit brought by one John Dunham against L. H. Underwood was levied by the sheriff on the goods in controversy, and other attachments were levied thereon a few days afterwards. The plaintiff, learning that Underwood had mortgaged his stock, sent one E. W. Daily to Ness City to look after its interests. After learning that Underwood had absconded, T. B. Gorton, the manager of plaintiff's business at Kansas City, went to Dade county, Missouri, and brought suit against Underwood for the full amount of all goods delivered to him, and obtained an order of attachment, and had the same levied on certain lands situated in that county. This writ of attachment was issued on the 13th day of May, 1887. This action was brought by the plaintiff in Ness county on the 23d day of May, 1887. The plaintiff afterward amended its petition in the Dade county attachment suit so as to leave out all the goods in controversy in this case, and asked and obtained

judgment for the balance only. The case was tried by a jury, and a verdict rendered in favor of the defendants, and the plaintiff brings the case here for review.

*Lewis & Fierce,* for plaintiff in error.

*Geo. S. Redd,* and *Buchan, Freeman & Porter,* for defendants in error.

The opinion of the court was delivered by

ALLEN, J.: While various questions are raised by the plaintiff in error on the rulings of the court as to the admission of evidence and on the instructions, it is only necessary to consider whether the plaintiff is entitled to recover on the conceded facts of the case. In the brief for the plaintiff in error two questions are asked: (1) Did the written contracts under which Underwood obtained the property constitute a sale from plaintiff to him? (2) If not, did the act of the plaintiff in bringing the attachment suit in Dade county, Missouri, have the effect to pass title to him? These questions will be considered in their order.

I. As to the Knowlton mowers, we think the contract was one of agency, under which the title to the mowers remained in the plaintiff until it elected to treat the transaction as a sale to Underwood. As to the contract under which the plows and other implements were shipped to Underwood, we think it a contract of sale which passed to Underwood a title to the property in the first instance, subject only to be defeated by the actual exercise of the election of the plaintiff to retake the unsold property as its own, instead of notes of the plaintiff, as provided in the contract. This contract is, first, an order from Underwood to the plaintiff for the goods, to be paid for in installments, and upon terms stated in the order. This alone, if accepted by the plaintiff, would be a simple sale on credit. The only language in the contract under which the plaintiff can claim title is as follows: "All goods remaining unsold at the end of season to be settled for by

*1. Sale of goods— passing of title —option to retake goods.*

said Underwood's individual notes, due October 1, 1888, se-
cured (if the Moline Plow Company so direct) by farmers'
notes, or said unsold goods to be stored, free of charge, as the
Moline Plow Company's property.   Either settlement, as
above, to be wholly optional with the Moline Plow Com-
pany." Until the Moline Plow Company exercised its option
to recover the goods as its own property, we think the title
was in Underwood. There is no pretense that this option
was exercised prior to the attachment of the goods by the de-
fendant, and the levy on them as the property of Underwood
was therefore valid.

II. As the title to the Knowlton mowers remained in the
plaintiff until it by some subsequent act treated them as sold
to Underwood, it becomes necessary to consider the effect of
the attachment suit in Dade county, Missouri. It is not con-
tended by the plaintiff that it could pursue both remedies —
one for the recovery of the specific property, and the other for
the price, at the same time; but the claim is, that, inasmuch
as the plaintiff was in ignorance as to the exact facts with ref-
erence as to what had been done with the mowers, it might
commence an action for the purchase price of all of the prop-
erty which had been shipped to Underwood, and thereafter
amend its petition so as to leave out all property that might
be reclaimed, the mere bringing of a suit for the purchase
price did not operate as a complete and final election, if
the plaintiff at the time intended to recover all of the property
it could, and then obtain a judgment in the action only for
the balance.

The plaintiff claims that it acted without definite knowl-
edge as to the facts, and, therefore, is not bound by its ap-
parent election to sue for the value of the goods. It may be
conceded that, if the plaintiff had been induced to bring the
attachment suit by false information from Underwood, or the
attaching creditors, as to what had become of the mowers, on
discovery of the actual facts it might recover the specific prop-
erty, and that an election induced by fraud would not be
binding. This proposition finds support in these cases: *Hays*

*v. Midas,* 11 N. E. Rep. [N. Y.] 141; *Foundry Co. v. Hersee,* 103 N. Y. 25; *Kraus v. Thompson,* 44 Am. Rep. 182. But, under the plaintiff's own showing, can it be said that the attachment suit was brought in ignorance of the facts? It appears from the testimony of T. B. Gorton, plaintiff's manager, that he learned that Underwood had placed a chattel mortgage on his property and absconded, and that he at once sent E. W. Daily to Ness City to look after the company's interest, to get security for what was owing the company; and to make disposition of the goods remaining on hand; that Gorton then went to Dade county, Missouri, and commenced the attachment suit without having accurate information as to the goods that had been sold by Underwood. The company thus had representatives at both places. It seems to have been plaintiff's purpose to pursue both remedies, knowing that it had both. Its only lack of knowledge as to the facts was want of definite and specific knowledge as to the exact amount of unsold goods.

It does not appear from the evidence that the plaintiff's agent, Daily, who went to Ness City, was not already in possession of accurate information as to the condition of the property there before the attachment suit was commenced. Daily was sent to Ness county to replevy the goods on hand. These instructions were given after Gorton knew that they had been attached, and before the attachment suit was commenced in Dade county. At the time the attachment suit in Dade county was commenced, Gorton counseled with his attorneys as to the effect of bringing the replevin suit and the attachment suit at the same time, and the attachment suit was brought under the advice of counsel that both suits could be brought, and that plaintiff could afterward amend its petition in the attachment suit so as to claim only for the goods not recovered in the replevin action, without affecting its rights in the latter suit.

In view of all these facts shown by the plaintiff's own testimony, it cannot be held that the plaintiff acted in ignorance of its rights. That the two remedies are inconsistent, is

clear. The plaintiff had no right to recover from Under-wood the purchase price of goods which it had not sold to him but elected to still retain. Unless the title had passed to Underwood, it had no claim on him for the value. If the title had passed, it had no right to the goods. We think, under this contract, after Underwood had absconded, the plaintiff had the right to treat the season as closed, and the goods as sold to Underwood; that, in order to maintain an action for the price, it was not necessary that the plaintiff should wait until the expiration of the ordinary season for the sale of agricultural implements, nor that Underwood should have actually given or refused to give his notes in accordance with the contract, but that his acts were sufficient to authorize the plaintiff to treat the goods as sold to him and bring an action for the purchase price. Having made its election with a knowledge at least of the more

2. Election of remedies— conclusiveness.

important facts affecting its rights, the plaintiff may not thereafter abandon its first election and choose the opposite remedy. An election, once fairly made by a party having the right to make it, is final and conclusive. (*Fowler v. Savings Bank*, 113 N. Y. 450; *Bailey v. Hervey*, 135 Mass. 183; *Crompton v. Beach*, 25 Atl. Rep. (Conn.) 446; *Gray v. St. John*, 35 Ill. 222; *Nield v. Burton*, 49 Mich. 53.) The subsequent amendment of the pleadings, and the fact that the plaintiff took judgment only for the goods actually sold by Underwood, under the authorities, cannot affect the rights of the parties in this case.

We think there was no substantial error in the ruling of the court on the admission of testimony, and that the instructions are quite as favorable to the plaintiff as the law will warrant. We do not see that the plaintiff could have been prejudiced by the instruction that a demand was necessary. The proof showed, without contradiction, that a demand was in fact made. None of these matters are important, in the view we take of the case, for, under the facts disclosed, the plaintiff cannot recover. The judgment is therefore affirmed.

All the Justices concurring.