No. 38,808

THE EMPORIA WHOLESALE COFFEE COMPANY, *Appellant*, v. WALTER REHRIG and FRANCES JEAN PETERSON, *Appellees*.

(252 P. 2d 590)

Opinion filed January 24, 1953.

*Owen S. Samuel*, and *Owen Samuel, Jr.*, both of Emporia, were on the briefs for the appellant.

*Alex Hotchkiss*, of Lyndon, was on the briefs for the appellees.

The opinion of the court was delivered by

WEDELL, J.: This was an action by the Emporia Wholesale Coffee Company, a corporation, to recover a balance due for equipment sold and delivered to the defendant, Harry Peterson, for the operation of a restaurant business and to have its claim declared a prior lien thereon. Plaintiff recovered a money judgment for the balance due but it was held its lien was inferior to that of the defendant, Walter Rehrig. From this judgment plaintiff appeals.

Appellees are the defendants Walter Rehrig and Frances Jean Peterson, the former wife of Harry Peterson. We shall continue to refer to the parties as plaintiff and defendants and by name where necessary to distinguish between the defendants. We need not detail the lengthy pleadings. The issues therein joined readily may be gleaned from the following general statement and the findings made by the trial court:

The defendant, Rehrig, made a loan to the defendant, Peterson, with which to buy restaurant equipment and fixtures from Marcel Vigneron and to purchase additional equipment therefor. Peterson made and delivered a note and chattel mortgage to Rehrig with the intention that the mortgage should cover the additional equipment to be purchased immediately. It was later discovered that mortgage failed to contain a description of the after acquired equipment. In Rehrig's cross petition he sought reformation of his mortgage to include the additional equipment which was purchased from the plaintiff. After Rehrig obtained his chattel mortgage from Peterson and his wife Peterson purchased the additional equipment from plaintiff. Plaintiff relies on an instrument it obtained from Peterson some time after delivery of the equipment to, and use of it by, Peterson, contending it was a purchase-money mortgage and constituted a lien prior and superior to that obtained by Rehrig. Plaintiff's instrument was not signed by Peterson's wife. The equipment was claimed by her as exempt property. She had obtained title thereto in a divorce and alimony action. Other important details of the transactions are contained in the trial court's findings of fact.

The district court tried the action without a jury and made unusually extensive findings of fact upon which its conclusions of law were based. In view of these findings it would constitute useless duplication to narrate the facts in addition to setting forth the detailed findings. Objections to findings, however, will be noted later.

The findings of fact and conclusions of law are appended hereto and made a part hereof.

The trial court's memorandum opinion indicates plaintiff's principal contentions in support of its motion for a new trial were the court erred in concluding (1) title to plaintiff's property had passed to Peterson (2) plaintiff's mortgage was not a purchase-money mortgage and (3) that the articles sold were exempt property. Plaintiff, however, also argues here the court erred in other respects. We shall treat all of plaintiff's contentions.

We turn first to the facts upon which the judgment of the trial court was based. The court's memorandum opinion discloses plaintiff's motion to modify the findings of fact and conclusions of law was not filed until after a hearing had been had on at least a part of plaintiff's motion for a new trial. A hearing on a motion attacking findings of fact by a court or jury should be had before the motion for a new trial is presented. Only in this manner can the wrong done, if any, in such findings be remedied and a new trial avoided. It is only in the event the trial court fails to make the corrections, or to supply an omission therein, that ground for a new trial exists as to that particular matter. (*Shuler v. Lashhorn,* 67 Kan. 694, 701, 74 Pac. 264.) The trial court, however, did consider the motion attacking both findings of fact and conclusions of law. It stated:

"However, I have examined said motion and it is denied. Some of the matters suggested are already sufficiently covered by the findings, some relate to matters not covered by the evidence on the trial, and some are contrary to the Court's views of the evidence and the law."

Studious consideration of the record does not justify a reversal of the last quoted ruling. The question remaining, therefore, is whether the findings made support the court's conclusions of law. We think they do.

Plaintiff's contention title to the articles it sold did not pass to Peterson is untenable. In its original petition plaintiff chose the theory on which it claimed a lien. It expressly alleged it relied on a chattel mortgage it had obtained from Peterson. Under that theory title had passed to Peterson. Otherwise he could not have executed a valid mortgage on the property. The filing of such a petition constituted an election of plaintiff's remedy. (*Plow Co. v. Rodgers,* 53 Kan. 743, 749, 37 Pac. 111.) An election of a specific theory for relief operates as a bar to the subsequent adoption of a

different and wholly inconsistent theory. (*Railway Co. v. Henrie*, 63 Kan. 330, 334, 65 Pac. 665.) Plaintiff having chosen where it would stand could not thereafter change its position by adopting the wholly inconsistent theory it had retained title until payment. (*Hamilton v. McGinnis*, 119 Kan. 719, 722, 241 Pac. 690.) Plaintiff's contention it retained title is barred for another reason. Its conduct was inconsistent with its claim this was a sale for cash on delivery and that title, therefore, remained in it until payment. (Findings 7 to 13, incl.) In *Grain Co. v. Harbour*, 89 Kan. 824, 133 Pac. 565, this court quoted with approval from Williston on Sales, as follows:

"Accordingly, if after bargaining for a cash sale the seller subsequently voluntarily delivers to the buyer the goods *with the intent that the buyer may immediately use them as his own, and without insisting upon contemporaneous payment,* this action is absolutely inconsistent with the original bargain. Such a delivery is not only evidence of the waiver of the condition of cash payment, it should be conclusive evidence." (Our italics.) (p. 833.)

In Rehrig's cross petition he sought reformation of his chattel mortgage to include the property to be purchased by Peterson from plaintiff. In the light of the evidence Rehrig's mortgage was properly reformed. (See particularly finding 5.)

Plaintiff's mortgage did not constitute a purchase-money mortgage. The general rule seems to be well settled that a mortgage on land executed to secure the purchase money by a purchaser of the land contemporaneously with the acquisition of the legal title thereto, or afterward, but as a part of the same transaction, is a purchase-money mortgage. The deed and mortgage need not be executed at the same moment, or even on the same day, to make them contemporaneous, within the meaning of this rule, provided they are parts of one continuous transaction, and so intended to be. (36 Am. Jur., Mortgages, § 15.) To the same effect is 59 C. J. S., Mortgages, § 231b. Here the evidence failed to disclose such a transaction. (See findings 7 to 13, incl.)

Did the articles purchased from plaintiff constitute "tools and implements" for a restaurant business within the contemplation of G. S. 1949, 60-3504, *Eighth?* At the time of their purchase Peterson was the head of a family and was engaged in the restaurant business. It is not contended the articles purchased were not necessary for the operation of the restaurant. Without them Peterson could not properly have operated the business. This was the theory on which plaintiff sold them to Peterson. We think they are reasonably within the contemplation of the statute and con-

stitute exempt property. (*Reeves v. Bascue,* 76 Kan. 333, 91 Pac. 77; *Saunders v. Graff,* 103 Kan. 261, 262, 173 Pac. 413; *Federal Agency Investment Co. v. Baker,* 122 Kan. 460, 252 Pac. 262.) "Tools and implements" are not to be confined to such implements only as are used by the hand of one man. (*Jenkins v. McNall,* 27 Kan. 532, 533.) The fact the property may not be used exclusively by the owner in person but also by his employees does not extinguish its exempt character. (*Bliss v. Vedder,* 34 Kan. 57.) Plaintiff leans heavily on the case of *Williams v. Vincent,* 70 Kan. 595, 79 Pac. 121, in which it was held a bowling alley was not exempt. We think under the more liberal modern interpretation of exemption laws it cannot well be said that ovens and the other equipment here involved, conceded to be essential to the proper operation of a restaurant business, and which were in constant use by the owner were nonexempt property.

A mortgage of exempt personal property whether owned by the husband or wife or by both of them is invalid without their joint consent and unless executed by both of them. (G. S. 1949, 58-312.) Here the wife's consent was lacking. Of course, had plaintiff's mortgage been a purchase-money mortgage the wife's consent would not have been required. (*Boggs v. Kelly,* 76 Kan. 9, 90 Pac. 765.)

Counsel for plaintiff vigorously contend it should have been granted a prior lien by reason of the overall equities involved. Their contention has received our careful consideration. However, in view of the discriminating findings of fact which, as previously indicated, are binding on this court, we would not be justified in reversing the judgment.

Although it is conceded the trial court's order pertaining to a division of the costs is not assigned as error counsel for plaintiff contend costs ordinarily follow the judgment. It is, therefore, argued plaintiff should be charged with no portion of the costs. The trouble with the contention is this judgment is not single but multiple in character. It is true plaintiff obtained a money judgment for the balance due it from Peterson. The principal issue, however, was not whether plaintiff was entitled to that judgment but rather whether its lien was prior to that of Rehrig. A judgment was also rendered in favor of the defendant, Frances Jean Peterson. On the last two issues judgment went against plaintiff. We would not be justified in disturbing the judgment pertaining to a division of the costs.

The judgment is affirmed.

## "FINDINGS OF FACT

### "I

"In the fall of 1948, Marcel Vigneron remodeled his place of business in Osage City, known as Armand's Cafe, so that his kitchen space was reduced one-half. Because of this change he procured the assistance of Ray Smith, plaintiff's representative, to prepare a floor plan of the kitchen and to advise as to its proper equipment. Smith did so and recommended installation of a stack oven, a thermostatically controlled steak grill, a French fryer, and a warming device called a Thurmaduke. A stack oven consists of two ovens, one above the other, and used for roasting and baking. A Thurmaduke differs technically from a steam table, but serves the same purpose and is commonly referred to as a steam table. None of this suggested equipment was ordered by Vigneron.

### "II

"Before the remodeling was completed, Vigneron leased the cafe and certain fixtures to the defendant, Harry E. Peterson, and he also sold his dishes, silverware and kitchen utensils to Peterson at the agreed price of $700. Vigneron informed Peterson in detail as to the equipment recommended by Smith and where it could be obtained, that it would cost about $1000 and was necessary for the proper operation of the cafe; that he had intended buying this equipment but that Peterson could go ahead and buy it; and that in addition to its cost and the $700 due for dishes, silverware and kitchen utensils, Peterson would need two or three hundred dollars for merchandise, making a total of $2000 which Peterson would need.

### "III

"In order to finance the transaction, Peterson applied to the defendant Rehrig for a loan of $2000, stating that he had leased the cafe and needed that sum to pay Vigneron's $700 and to buy a Thurmaduke, French fryer, stack oven and grill which he had learned of through Vigneron, and which he (Peterson) intended to purchase from the Emporia Wholesale Coffee Company. As security, Peterson offered Rehrig a chattel mortgage on the articles he was buying from Vigneron, also those he was getting from the Emporia Wholesale Coffee Company, and also on his household goods. Rehrig accepted this offer and agreed to make the loan on those terms.

### "IV

"On December 21, 1948, Peterson and Rehrig went to the office of F. T. Hepworth, where Peterson requested Hepworth to prepare a note and chattel mortgage to Rehrig. Rehrig heard the instructions given by Peterson, but took no part in them. In accordance with the directions given by Peterson, Hepworth prepared a note for $2000, due in 3 years, $30 to be paid each month on the principal; and also a chattel mortgage securing said note and covering 'the following described property now in our possession, to wit: One grill and steam table, dishware, kitchenware and utensils and two ovens, all located in Armand's Cafe; also household goods.' When these papers were completed, Peterson signed them, then sent out for his wife, who came in later and signed

them also. Afterwards and on December 21, 1948, a copy of said chattel mortgage was filed in the officer of the Register of Deeds of Osage County.

## "V

"Without any objection on the part of Rehrig, Peterson said nothing to Hepworth about either a fryer or extra accessories for a Thurmaduke, nor was anything said of Peterson's intention to purchase kitchen equipment for the coffee shop. As was well known to Rehrig, Peterson did not at that time own any grill, steam table, ovens or similar articles, nor was there any such property in Armand's Cafe, but .no suggestion was made that the words 'to be acquired' or terms of similar import be incorporated in the mortgage. However, it was the intention of Peterson and his wife to give and of Rehrig to receive a chattel mortgage covering the Thurmaduke, French fryer, stack oven and grill suggested to Peterson by Vigneron, and which Peterson intended and was about to buy and did buy from the Emporia Wholesale Coffee Company on January 5, 1949. Rehrig did not read the mortgage closely prior to paying the $2000 over, and he had no legal advice about the mortgage or what it should contain. He relied on Peterson's instructions to Hepworth as being adequate; thought the description proper and sufficient, and would not otherwise have taken it; and he paid out the money so that Peterson would have funds with which to buy the equipment from the Emporia Wholesale Coffee Company.

## "VI

"On January 5, 1949, Peterson, accompanied by Vigneron, visited plaintiff's salesroom, but the latter took no part in the conversation. Peterson informed Smith that he was interested in buying, as a cash on delivery transaction, a stack oven, a Thurmaduke food warmer and equipment, and a thermostatic control grill. No mention was made in this conversation either of the plan previously prepared by Smith for Vigneron or the particular equipment which Smith had recommended to Vigneron. Articles of the kind above mentioned are constructed in units of varying size so that they may be adapted to the particular needs of each purchaser, and plaintiff did not have in its salesroom any of the exact items desired by Peterson. It did have on display as samples, other models of some of them, but it had .no sample stack oven, and as to it and possibly some other articles, reference was made to a catalogue.

## "VII

"On said date Peterson placed his order with plaintiff for the following: One No. *6680* Thurmaduke food warmer, also extra accessories for use therewith; *one No. 232-E gas roasting oven,* 2 oven controls; one Anets S-36" Grillolator; and one Anets *FGS 11 x 11"* twin basket fryer. The Thurmaduke and fryer so ordered were not the same as those recommended by Smith to Vigneron. While this purchase was understood to be for cash on delivery, plaintiff agreed not to collect until after all of the articles ordered had been delivered. Other than that the sale was for cash on delivery, nothing was said about plaintiff retaining title to the articles ordered until all had been paid for. However, as each article was delivered to Peterson, plaintiff charged the same to him on its open running account with him, along with other items of merchandise which he had purchased from time to time.

## "VIII

"Thereafter plaintiff ordered from the respective manufacturers in Missouri, Illinois and Indiana, the various articles bought by Peterson on January 5, 1949. The accessories for the Thurmaduke *was* delivered by plaintiff to Peterson about January 12, 1949. The Grillolator and fryer, and the stack oven, were shipped by the factories direct to Armand's Hotel at Osage City, the Grillolator and fryer being delivered to Peterson about January 19 and the oven about January 24. On February 11, plaintiff delivered the Thurmaduke to Peterson, and this completed delivery of all the articles purchased on January 5. As they were delivered, each of said articles was installed in the coffee shop and were used by Peterson in the operation thereof; the cafe being opened for business on February 13, 1949. At the time of the respective deliveries nothing was said about any reservation of title by plaintiff.

"On January 31, 1949, Peterson ordered from plaintiff a dish shelf to be used with the Thurmaduke, and this was delivered on February 24. The terms upon which this purchase was made are not shown by the evidence.

## "IX

"Plaintiff's custom of handling its collections is to have its salesman on his regular visits to customers present their past due accounts for payment, such regular visits being made at two-week intervals. In pursuance of this custom plaintiff's salesman, on his regular visit on February 25, requested payment of Peterson's whole account, amounting to $1311.31, and including all of the above mentioned items and also some supplies which he had purchased. Peterson was unable to pay the whole amount, but gave the salesman a check for $805.80. The salesman retained this check, stating that he had no authority other than to submit the matter to C. J. McNeill, plaintiff's president, for his approval.

## "X

"On the following day, February 26, plaintiff accepted said check as part payment of Peterson's account, crediting $801.00 to the equipment items and the remainder, $4.80, being applied in payment of supplies bought by Peterson. The salesman was instructed to return and take the matter up with Peterson within the next day or two and to get the balance in cash or to have him sign the instrument, a copy of which is attached to plaintiff's petition. The salesman did not contact Peterson until about 10 days later, when, on March 8, Peterson signed said instrument and delivered it to the salesman. Mrs. Peterson did not sign this instrument, was not asked to do so, knew nothing of it, and thought plaintiff had been paid in full until sometime after January 1, 1950. When plaintiff took said instrument it had no actual knowledge of the chattel mortgage held by Rehrig.

## "XI

"The instrument which plaintiff's salesman procured from Peterson on March 8, 1949, is in form a conditional sales note. It contains a promise to pay plaintiff $531.49 in installments of $100 and interest each two weeks on regular salesman's trips commencing March 11, 1949. It further recites that the consideration for said note is the agreement of plaintiff 'to sell the following described personal property, to wit: 1-S36 Anets Grillolator; 1-#6670 Thurma-

duke and equipment; 1-FG-11Anets fryer; 2-Upholstered Booths; 1-S. B. Stack oven' and provided further that 'Delivery of said property to the makers hereof is on the express condition that the ownership and title to the aforesaid personal property shall remain in the seller, the Emporia Wholesale Coffee Company or its assigns until this note is paid in full.' A copy of the instrument was filed in the office of the Register of Deeds of Osage County on March 24, 1949. The amount of this mortgage was substantially the difference between the cost of the equipment bought by Peterson and the $801.00 paid on the account on February 26, 1949.

"XII

"The property purchased by Peterson from plaintiff had been delivered to him by plaintiff without condition or any agreement for the retention of title by plaintiff, long prior to the execution of said instrument. It was in Peterson's possession, had been installed in said coffee shop, and was being used by him in the operation of said business. Plaintiff did not retake possession of said property prior to procuring said instrument. The description of the Thurmaduke and oven contained in said instrument differs from the correct description of the Thurmaduke and oven purchased and delivered to Peterson, but plaintiff did not, in this action, seek reformation of the description in said instrument.

"XIII

"The articles purchased by Peterson were used by him in operating said coffee shop from February 13, 1949, when said cafe was opened for business, until Peterson left Osage City about January 1, 1950. Thereafter Mrs. Peterson operated said business and used said articles until the cafe was closed down on March 24, 1950. During this time there was no steam table, grill or oven or similar equipment in said cafe other than the equipment purchased from plaintiff. All of the equipment so purchased by Peterson was necessary to the proper operation of said cafe. Neither Peterson nor Mrs. Peterson ever paid anything on the debt evidenced by said instrument. The whole of said indebtedness became due about May 20, 1949, with interest from March 8, 1949, at the rate of 8% per annum.

"XIV

"By stipulation filed in this case on May 8, 1950, the plaintiff and the defendants Rehrig and Vigneron agreed that the upholstered booths mentioned in plaintiff's instrument should be sold to Marcel Vigneron for $75.00, the defendant Rehrig disclaiming any interest therein, and that the other property now in controversy should also be sold to Vigneron for $456.49, the proceeds to be deposited with the Clerk of the Court pending the termination of this lawsuit; all to be without prejudice to the respective claims of plaintiff and Rehrig. Said sum is now on deposit with the Clerk of this Court and stands in lieu of the property in question. Neither Peterson nor his wife were parties to this agreement. Both have filed answers but neither has challenged this arrangement.

"The sum of $75.00 received by plaintiff should be credited upon its claim under said instrument, leaving a balance now due to plaintiff from the defendant Harry E. Peterson of $558.73 with interest at 8% from this date.

"XV

"During the time Peterson operated said cafe, he bought from plaintiff supplies and merchandise other than said equipment, amounting to $346.39, which amount is past due and unpaid, and which plaintiff seeks to recover in this action. This debt is not secured in any manner and is over and above any rights plaintiff may have by virtue of the instrument above mentioned. That there is now due plaintiff thereon from Harry E. Peterson the sum of $391.12 witn with interest at 6%.

"XVI

"Commencing in March 1949 and ending in February 1950, the defendants Peterson made at various times fourteen $30.00 installments upon the Rehrig mortgage, but no more. The entire debt became due December 21, 1951. Said indebtedness drew interest from date to maturity at 6% per annum and 8% after maturity. There is now due to the defendant Rehrig from Harry E. Peterson and Frances Jean Peterson on said indebtedness the sum of $1932.70 with interest from this date at 8% per annum.

"XVII

"On March 25, 1950, in Case No. 12,393, the District Court of Osage County granted a divorce to the defendant Frances Jean Peterson from her husband, the defendant Harry E. Peterson. In the decree Mrs. Peterson was awarded as alimony 'all the equity in the furniture and household goods and restaurant located in the Armand Hotel Coffee Shop Osage City, Kansas, subject to any indebtedness existing on the last hereinbefore described property.' By virtue of this decree, Mrs. Peterson is now the owner of said property subject to the rights of plaintiff and the defendant Walter Rehrig as determined herein.

"CONCLUSIONS OF LAW

"I

"Plaintiff is entitled to recover judgment against Harry E. Peterson for $558.73 with 8% interest upon its note alleged in the petition, and the further sum of $391.12 with 6% interest for merchandise sold and delivered to Peterson as set out in the petition.

"II

"The defendant Walter Rehrig is entitled to recover judgment for $1932.70 with 8% interest against Harry E. Peterson and Frances Jean Peterson upon the note set out in plaintiff's cross petition.

"III

"By its acts and conduct plaintiff waived the condition of its original agreement with Peterson for payment on delivery, and on such delivery Peterson became the owner and in possession of the equipment purchased by him.

"IV

"The mortgage taken by plaintiff was not contemporaneous with the delivery of said equipment to Peterson, nor a part of the same transaction, and was not a purchase money mortgage.

"V

"The equipment described in plaintiff's mortgage was exempt property; and plaintiff's mortgage, not being signed by Mrs. Peterson, was invalid and created no lien in favor of plaintiff.

"VI

"The defendant Rehrig's mortgage should be reformed to conform to the intention of the parties thereto, by describing the mortgaged property as ' the Thurmaduke and equipment, Grillolator, French fryer and stack oven about to be acquired by the mortgagors' from the Emporia Wholesale Coffee Company.

"VII

"Defendant Rehrig is entitled to have said mortgage, as reformed, foreclosed; and the judgment herein rendered in his favor is, by virtue of said mortgage, decreed to be a first lien on the property in question.

"VIII

"The defendant Frances Jean Peterson is adjudged to be the owner of said property, subject to the lien of said judgment in favor of the defendant Rehrig."