No. 39,796

WHITE STAR MACHINERY & SUPPLY COMPANY, INC., a Corporation, *Appellee,* v. LYNN ROULSTON and ETTA ROULSTON, *Appellants.*

(289 P. 2d 749)

Opinion filed November 12, 1955.

*R. O. Robbins,* of Sedan, argued the cause and was on the briefs for the appellants.

*William P. Thompson,* of Wichita, argued the cause and *John M. Wall,* of Sedan, *A. W. Hershberger, J. B. Patterson, Richard Jones, H. E. Jones* and *Jerome E. Jones,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is an action for replevin. Judgment was for plaintiff. Defendants have appealed.

After the formal allegations, the amended petition alleged plaintiff was the owner of the machinery described in a chattel mortgage

given by defendants to plaintiff, a copy of which was attached, to secure the payment of a note for the purchase price of the machinery; that the defendants had defaulted in payment of two installments on the note and plaintiff was entitled to possession; had made demands for it and defendants had refused to deliver. The prayer was for possession of the machinery and costs.

A copy of the chattel mortgage was attached. It listed the machinery as follows:

"1 ea.—Used TD-14 International crawler tractor, serial # 22406,
with a Bucyrus-Erie bulldozer and Tulsa winch......... $7,045.00
1 ea.—Used 10 ton single axle dual trailer............... ... 1,800.00
1 ea.—New Henry G-2 Scraper 2 yard including valve freight &
installation. .................. ............. 1,100.00
1 ea.—Used TD-6 IHC crawler, serial # 30548, with Bucyrus-
Erie bulldozer, s/n 93069. .......... .. ......... 4,960.00
Open account for repairs................ . ..... 810.00

15,715.00
Less Trade-in ....... .... ...... 4,960.00

10,755.00
Sales Tax ......... ... ..... ........... 215.10
Carrying Charge ........... .. .. ....... 967.95

$11,938.05"

This appeal concerns only the fourth item, that is, the "Used TD-6 IHC crawler, serial #30548," listed on the mortgage at a price of $4,960. A copy of the note was attached. A replevin bond was filed, an order of replevin was issued and the sheriff took possession of all the property.

The answer of Lynn Roulston admitted the execution and delivery of the note and mortgage; denied that plaintiff was their owner, but alleged that plaintiff had sold them to the CIT Corporation and plaintiff had so advised defendants. The answer further alleged the machinery was owned by defendant Lynn and his wife and he gave the chattel mortgage for the purpose of securing payment of the note; that the machinery was exempt from seizure and sale upon any process issued from any court, as provided in G. S. 1949, 60-3504; that defendant was married and the head of a family, which plaintiff knew at the time of the execution of the note and mortgage, and they were taken without the joint consent of the defendant's wife and without being executed by her. The answer

further denied that defendant received the $810 shown on the chattel mortgage opposite the item "Open Account for Repairs" and further alleged the machinery was taken by the sheriff on May 9, 1953, and delivered to plaintiff; that it was used by defendant Lynn to make his living and on account of the taking it was necessary for him to employ counsel and he had not been able to carry on his business of contracting for the moving of dirt and of farming and had been damaged, how much, he could not say because he did not know how long he would be deprived of the use of the machinery.

The prayer of the answer was for a return of the machinery or the value thereof in case a return cannot be had, and damages for the taking and withholding.

Etta Roulston, the wife of Lynn, was permitted to intervene. She filed an answer substantially as that of her husband Lynn and prayed for the same relief.

The plaintiff's reply first denied all new matter, then admitted that Lynn was a married man and the note and mortgage did not bear the signature of his wife, but denied that the machinery was at any time owned by Lynn and his wife jointly, and denied that the machinery was at any time exempt from seizure or sale upon any process issued by the court, under the provisions of G. S. 1949, 60-3504.

The issues were submitted to the trial court without a jury. There was not much dispute about the actual facts.

The trial court found that on July 1, 1952, Lynn signed an agreement to purchase the TD-6 IHC crawler tractor in question for $6,358.25 and paid $100 therefor. On July 29, 1952, Etta came to the office of plaintiff and presented a check payable to her in the amount of $6,755.50 to pay the balance of the purchase price and was given $616.14 in change; that she obtained the check by placing a mortgage on real estate owned by herself and her two sons.

The court further found that at all times Lynn and Etta were husband and wife and Lynn was head of the family; that at the time of the transaction on July 2, 1952, they were preparing to engage in farming and on July 29, 1952, at the time when the balance of the purchase price was paid defendant took the tractor to their farm where it remained until it was taken by the sheriff; that the defendant used this tractor in his farming operations, but he also used it in dirt moving work; he needed some additional machinery and on November 3, 1952, he and Etta went to the office of

plaintiff to buy other and heavier machinery, but Etta did not go into the office, but sat outside in the car; that Etta did not know about the transaction of November 3, but learned about it afterwards.

In view of the arguments of parties and the final judgment finding No. 5 will be set out verbatim. It is as follows:

"That on November 3, 1952, when the defendant, Lynn Roulston, purchased the additional equipment from the plaintiff, he had no funds with which to make the down payment required by the plaintiff, but to procure such funds, said defendant sold the used TD 6 IHC Crawler tractor back to the plaintiff for the sum of $4960.00 and that said TD 6 IHC Crawler tractor was included in the note and mortgage which the defendant, Lynn Roulston, executed when he purchased the additional machinery and was given credit by the plaintiff for the sum of $4960.00 on the purchase price of all the machinery (Ex 1) which is as follows:

"1 used TD 14 International crawler tractor, serial No. 22406, with a Bucyrus-Erie bulldozer and Tulsa winch.

"1 used 10 ton single axle dual trailer.

"1 New Henry G-2 Scraper 2 yard.

"1 Used TD 6 IHC crawler, serial No. 30548, with Bucyrus-Erie bulldozer, s/n 93069.

but that Etta Roulston, the wife of the defendant, did not sign the note or chattel mortgage and did not consent thereto."

The court then found that the chattel mortgage was duly recorded and at the time the negotiations for the additional machinery were had, defendant had actual possession of the TD 6 IHC crawler; it was never delivered to plaintiff, but remained in the possession of Lynn and was immediately resold to him; plaintiff sold the note to the CIT Corporation and when defendants defaulted, repurchased it and demanded return of the machinery, which Lynn did not give; that the action was commenced by the plaintiff, who filed the proper undertaking, and had the proper orders issued to the sheriff, who took possession of the equipment and delivered it to the plaintiff; that Lynn was the owner of the tractor in question and had a right to sell it to plaintiff; that Etta intervened in the action; was made a party defendant, and defendants had not presented any evidence on which the court could fix any amount of damages, if they had been damaged by reason of the action taken by plaintiff.

The trial court made conclusions of law that Lynn was not prohibited from selling the tractor to plaintiff; that the note and mortgage signed by Lynn was a purchase-money mortgage; that plaintiff

was entitled to judgment for possession of the mortgaged property, with costs.

Defendants filed a motion for judgment in their favor upon the findings of fact and conclusions of law, also a motion for a new trial on the grounds of erroneous rulings of the trial court; findings of fact were in whole or in part contrary to the evidence; that the conclusions of law were contrary to the evidence and contrary to the findings of fact. These motions were both overruled.

The final journal entry of judgment was that the findings of fact and conclusions of law should be the judgment of the court.

The specifications of error are the trial court erred in making findings of fact No. 9, 10 and 5; in making all the conclusions of law; in rendering judgment for the plaintiff; adjudging it to be entitled to the possession of the TD 6 IHC tractor; in overruling defendants' motion for judgment; in overruling defendants' motion for a new trial; and in failing to render judgment, as prayed for by the defendants.

Defendants in their brief state the questions to be: Was the TD tractor exempt?; Was the chattel mortgage a purchase-price mortgage?; and What judgment should be entered?

Although the pleadings deal with four separate pieces of machinery, only one is involved in this appeal, that is, the so-called TD 6 IHC crawler, sometimes referred to as the TD 6 tractor.

Defendants argue the chattel mortgage was invalid as to it because it was exempt property within the provisions of G. S. 1949, 60-3504, and since the mortgage was not signed by Mrs. Roulston it was invalid under the provisions of G. S. 1949, 58-312. G. S. 1949, 60-3504 provides in part as follows:

"Every person residing in this state, and being the head of a family, shall have exempt from seizure and sale upon any attachment, execution or other process issued from any court in this state, the following articles of personal property . . . *Eighth.* The necessary tools and implements of any mechanic, miner or other person, used and kept in stock for the purpose of carrying on his trade or business, and in addition thereto, stock in trade not exceeding four hundred dollars in value."

All concede that under the above statute this tractor was exempt. (See *Jackman v. Lambertson,* 71 Kan. 138, 80 Pac. 55.)

G. S. 1949, 58-312 provides as follows:

"It shall be unlawful for either husband or wife (where that relation exists) to create any lien, by chattel mortgage or otherwise, upon any personal property owned by either or both of them, and now exempt by law to resident

heads of families from seizure and sale upon any attachment, execution or other process issued from any court in this state, without the joint consent of both husband and wife; and from and after the time when this act shall take effect no such mortgage of personal property shall be valid unless executed by both husband and wife: *Provided,* That this act shall not be construed to invalidate any such mortgage or other lien except so far as relates to the exempt property covered thereby."

This mortgage was not signed by the wife. There are two other rules we must now consider with reference to this statute. One is, it does not prohibit the sale by the husband of exempt property. (See *Beach v. Fireovid,* 84 Kan. 357, 114 Pac. 206, also *Lupton v. Merchants Nat'l Bank,* 140 Kan. 615, 38 P. 2d 125.) The other is, the statute does not apply to a so-called purchase-price mortgage, that is, a chattel mortgage, to secure the purchase price of the chattel. (See *The State v. Perkins,* 112 Kan. 455, 210 Pac. 1091; *Bankers Investment Co. v. Meeker,* 166 Kan. 209, 201 P. 2d 117; also *Emporia Wholesale Coffee Co. v. Rehrig,* 173 Kan. 841, 252 P. 2d 590.)

It will be remembered this particular tractor was ordered on July 2, 1952, and actually bought, paid for and delivered to defendants on July 28, 1952. Soon thereafter it was taken to the farm of defendants, where it remained until the sheriff seized it in this action.

Now finding No. 5 becomes important. The trial court found that on November 3, 1952, at the time when defendant Lynn negotiated for the additional machinery he sold this tractor to plaintiff. It was resold to him and he gave the mortgage in question on it and the other machinery. The mortgage does list this tractor at a price of $4,960 and sets out an item of "Less Trade In" $4,960. Plaintiff argues that this finding was not attacked by defendants—hence it is conclusive here.

Ordinarily such would be true. However, it is hardly correct to say the findings were not challenged. One of the grounds for a new trial was that the findings of fact were in whole or in part contrary to the evidence. Where the evidence is uncontradicted, we will examine it on appeal and decide whether it was sufficient to sustain any finding.

Our actual question is then—Is there any substantial evidence in this record to sustain this finding of fact? For if this finding was correct, then this was a purchase-money mortgage and the judgment of the trial court was correct. Fortunately there is no

dispute in the evidence. The president of plaintiff company, with commendable frankness, testified in part as follows on direct examination:

"Q. To return just a moment to your transaction with Mr. Roulston, how did he pay for the equipment which you sold to him? A. When Mr. Roulston came to us to buy a tractor the size of a TD-14 and a trailer and a scraper, he said he had no money to make a down payment. We told him we couldn't make a sale less than 25% down payment and preferably a 33⅓% down payment of used equipment. We had sold him a TD-6 several months previously and he paid us cash for it. Some few weeks later he came back and said that he had spent all of his money buying a tractor and did not leave him enough money to operate as working capital in his business so we advanced him $1500.00 on the TD-6 tractor he had bought several weeks before. That was later paid and at that time he talked about buying additional equipment and I told him he would have to pay the note on the TD-6 before we could talk about selling him any more equipment. Then when we got down to this sale of the larger tractor, the TD-14 and trailer and scraper, I told him he would have to have at least 25% down payment. He offered his TD-6 as collateral for the down payment and I told him the only way we could handle that would be for us to buy from him for cash his TD-6. After we bought it, then we could turn around and resell it and use the money that would be paid for the TD-6 as a cash down payment on all four items of equipment, and that is when the TD-6 was bought from him and resold to him with the other three items. The money that we paid for the TD-6 was used as a cash down payment on all four items."

Also on cross-examination as follows:

"Q. Then so far as your purchasing this tractor back and reselling it to them, that was all just a paper transaction, was it not, you never took it back, you never got any title to it or anything, did you? A. Yes, we repurchased it and then sold it to him.

"Q. That is just a paper transaction purely, wasn't it? A. That is right."

Every one concedes this tractor was never delivered to plaintiff at the time of the transaction of November 3, to which the above testimony referred. There are many authorities to the effect that delivery of a chattel is generally necessary to pass title. (See 49 Am. Jur., p. 602; also *Barber v. Thomas*, 66 Kan. 463, 71 Pac. 845.) We do not care to place this decision on that ground alone, however. This so-called sale of November 3, 1952, was so obviously a subterfuge to evade the provisions of G. S. 1949, 58-312, that we cannot place our stamp of approval on it. The witness for plaintiff himself testified that it was no more than a paper transaction. To hold this was an actual bona fide sale and resale would be to open the door to an evasion of G. S. 1949, 58-312. This we will not do.

It follows that so much of the judgment as referred to the TD 6 IHC crawler must be reversed.

There are some equitable considerations having to do with the fact that this tractor was bought with money Etta had obtained by securing a loan on land owned by her. An argument could be made that the tractor actually belonged to her. We choose, however, to place the decision on the ground already mentioned.

There remains the question of what order we should make. G. S. 1949, 60-1010 provides in part as follows:

"In an action to recover the possession of personal property, . . . If the property has been delivered to the plaintiff, and the defendant claim a return thereof, judgment for the defendant may be for a return of the property, or the value thereof in case a return cannot be had, and damages for taking and withholding the same."

The trial court found the defendants had not presented evidence on which the court could fix any amount of damages, if they had been damaged by reason of the action taken by plaintiff. This finding of fact was really academic since the trial court found all the issues for the plaintiff. The evidence as to the damages sustained by defendants was rather meager and inconclusive.. At the time Etta was testifying on that, however, the subject of inquiry was as to all the machinery.

Since we are reversing this judgment as to the one tractor only, it becomes necessary for the trial court to try all the issues as to damages for the taking of this particular tractor and its value, as provided in G. S. 1949, 60-1010.

The judgment of the trial court is reversed insofar as it affected the TD 6 IHC crawler tractor, with directions to grant a new trial to defendant on the issues provided for in G. S. 1949, 60-1010.