No. 41,523

George Kittel and Golda Kittel, *Appellants*, v. Gayle A. Krause and Kathleen E. Krause, *Appellees*.

(347 P. 2d 269)

Opinion filed December 12, 1959.

*Robert J. Dole*, of Russell, argued the cause and was on the briefs for the appellants.

*Robert L. Earnest*, of Russell, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: Plaintiffs sought to recover a money judgment in an action arising out of breach of a written contract. This appeal by plaintiffs relates only to the verdict of the jury and the judgment in favor of defendants entered thereon by the trial court based on the first cause of action.

An amended petition, answer and reply established the issues and since there is no question as to the pleadings, we need not reiterate their contents herein.

On January 21, 1956, plaintiffs agreed, by written contract, to sell to defendants the following personal property: Two Harlee

freezers, a root beer dispenser, a walk-in cooler, a deep freeze, a five spindle multi-mixer, a roof sign and a cone dispenser, all used in the operation of a Tastee Freez business. The contract contained numerous provisions but we shall include herein quotation of only the salient parts relating to the first cause of action and this appeal, which concerns payment by the Krauses for the above equipment:

"(a) Purchaser agrees and understands that the purchase price of the above described equipment is $6,933.77 to be paid at the rate of $3.00 per every ten-gallon can of Tastee Freez Mix used by purchaser in conducting and operating the Tastee Freez business at 300 South Fossil, Russell, Kansas.

"It is agreed and understood that the creamery from which the Purchaser buys mix used in the operation of the Tastee Freez business shall have the right to add $3.00 to the purchase price of every ten-gallon can of mix sold to Purchaser and said Seller herein agrees that the creamery, from which the Purchaser purchases mix, shall act as agent in the collecting of the $3.00 per ten-gallon can, which shall be credited on the unpaid balance of the purchase price and interest thereon.

.    .    .    .    .    .    .    .    .    .    .    .    .    .

"(b)  .  .  .  4. In the event of any default by the Purchaser in the performance of any of the terms or conditions hereof, the Seller may at its option and without notice declare the unpaid portion of the purchase price, together with accrued interest thereof, if any, immediately due and payable, and thereupon the Seller may either proceed to collect from the Purchaser the balance due or retake possession of the property, including the supplies and products, wherever it may be found, with or without legal process, and hold the same free of all claims of the Purchaser and retain as liquidated damages all payment theretofore made."

A written sublease agreement and a subsequent written agreement providing for the moving of the above equipment to avoid expensive rent were a part of the contract and appear in the record but those agreements do not require our attention in this appeal.

The grounds of the motion for new trial and the errors complained of in the notice of appeal and the specifications of error are numerous but in reality we have only one prime question which is whether the above-quoted portions of the contract are ambiguous.

Plaintiffs moved that the trial court determine in advance of trial whether the contract was ambiguous by reason of the following allegation of defendants' answer:

"8. That said Conditional Sale Contract was impossible of being performed on Defendants part; that such a possibility was within the contemplation of the parties Plaintiff and Defendants; that both parties contemplated payment only if Tastee-Freez mix were purchased; that both parties contemplated pay-

ment only if the business remained a going concern and then in that event such payments would be made only at the rate of three dollars per can of Tastee-Freez mix purchased; that payment of three dollars per can of Tastee-Freez mix purchased was the only method of payment provided for and such payment is fully set forth in section (a) of the Conditional Sale Contract."

The trial court ruled that parol evidence to substantiate allegations of the answer as to facts in connection with contract negotiations would be admissible, and further stated:

"The court also finds that the contract is ambiguous as to the source of money from which payment under the conditional sales contract is made in the event of default in the contract. It being pointed out by the court that paragraph (a), which is the third paragraph on Page 1 of the conditional sales contract, sets out the source of money from which payments are to be made, namely, 'at the rate of $3.00 per every ten-gallon can of Tastee-Freez mix' etc. And paragraph number 4 on page 2 of the conditional sales contract sets out that in the event of default by the purchaser 'the seller may at its option . . . declare the unpaid portion of the purchase price . . . immediately due and payable. . . .' It being pointed out that it is ambiguous as to whether said paragraph 4 abrogates the provision of said paragraph (a) in regard to the source of moneys from which payment is to be made."

. This opened the way for an abundance of conflicting evidence in regard to preliminary negotiations and facts and circumstances present at the time of the execution of the contract by defendants on February 8, 1956, and by plaintiffs on February 13, 1956. The same was also true regarding the intention of the parties under paragraph 4 of provision (b) of the contract above quoted.

It was undisputed that the contract form was copied by plaintiffs from one previously used by them and a former purchaser of the same business. The defendants opened the business about March 17, 1956, and operated it until August 16, 1956, during which time the $3.00 payments were made pursuant to provision (a) of the contract until an amount of $176.36 was paid, leaving a balance of $6,757.41 due on the principal. Defendants had "kept the business open" for about five months in 1956 when they were required by the signed contract to keep the premises open for business a minimum of eight months. They did not reopen in the spring of 1957 notwithstanding the fact that the Kittels contacted them in regard thereto. Defendants had not paid any taxes and had failed to renew the liability insurance as provided in the contract.

Defendants had written plaintiffs in July, 1956, as follows:

"In the event I don't find a buyer and I am forced to close, I wonder what you plan to do?"

After defendants failed to reopen in March, 1957, plaintiffs commenced this action on September 3, 1957.

Plaintiffs counsel made requested instructions and the trial court gave most of them in substance. However, the court omitted and refused plaintiffs' requested instruction No. 17 wherein an attempt was made to give a legal explanation of "ambiguity of a contract" although a part of plaintiffs' requested instruction No. 19 was given in the trial court's instruction No. 11, as follows:

"In determining intention of the parties if ambiguity is found to exist in a a contract, the test is not what the party' preparing the instrument intended its doubtful or ambiguous words to mean, but what a reasonable person, in the position of the other party to the agreement, would have understood them to mean under the existing conditions and circumstances."

Plaintiffs' counsel again requested the trial court to instruct with reference to ambiguity in the contract and cited *Royer v. Silo Co.,* 99 Kan. 309, 161 Pac. 654, on the point:

"Where an ambiguous expression is used in a written contract, it is proper to show by evidence what the parties understood and intended by the expression, and to submit to the jury, with proper instructions, the interpretation of the expression as used in the contract." (Syl. ¶ 2.)

In the Royer case ambiguity existed as to two provisions of the contract and, as indicated above, this court held it was not error to submit to the jury, with proper instructions, the interpretation of the contract under the evidence.

The trial court again overruled plaintiffs' motion which could have been directed only to the above-quoted portion of the trial court's instruction No. 11 since that is the only reference to ambiguity. It should be noted that defendants also objected to No. 11 along with numbers 7, 8 and 9 because they were not correct statements of the law as to matters contained therein and were prejudicial to defendants. Defendants' objection was overruled.

The jury found in favor of defendants on the first cause of action. The trial court entered judgment in accordance therewith and the journal entry of judgment included the following:

"Thereupon, plaintiffs make oral application and request that the court determine, in advance of trial, whether or not the contract entered into by and between the parties, designated as Exhibit 'A' in the petition, is ambiguous for the purpose of determining whether or not parole evidence will be admissible at the trial with reference to said contract. Thereupon, after argument of counsel and after being fully advised in the premises, the Court finds that said contract insofar as it refers to payment in Section '(a), unnumbered paragraph 2 of said section, is ambiguous and that parole evidence will be admissible to explain

the intent of the parties with reference to said section, all as is more fully shown and set forth in the transcript of said cause."

We have examined plaintiffs' first contention that the trial court erred in overruling plaintiffs' motion for judgment on the pleadings because defendants' answer was unverified but it is not meritorious and we shall pass on to a more serious contention of error which is that the trial court erred in its order and ruling, in advance of trial, that the contract was ambiguous for the reason stated.

The written contract is the crux of the lawsuit and whether it was ambiguous was definitely a question that had to be determined and it was proper for the trial court to make such determination in advance of trial. ( G. S. 1949, 60-2902. )

When such a question of law has been determined by a trial court and appeal is taken therefrom, an ancient rule of this court is then applicable. It is that the appellate court has the same written contract or instrument before it as did the trial court and the appellate court can as efficiently examine the contract and determine its meaning and effect as could the trial court. A thorough discussion of this rule and citation of a few of our many decisions thereon is to be found in *Klema v. Soukup*, 175 Kan. 775, 267 P. 2d 501. Our most recent decision, filed November 7, 1959, is *Springer v. Litsey*, 185 Kan. 531, 345 P. 2d 669.

Defendants rely on *Brown v. Shields*, 78 Kan. 305, 96 Pac. 351, which involved a clearly ambiguous thirty day notice clause in a lease, and *Francis v. Shawnee Mission Rural High School*, 161 Kan. 634, 170 P. 2d 807, interpreting the meaning of a clause in a teacher's contract in regard to "the school year" where school was conducted for nine months and the salary was $2,345.00 payable in twelve monthly installments. We cannot agree with defendants that the final determinations and rules applicable in those cases are compelling in this appeal.

G. S. 1949, 58-315a defines a conditional sales contract as a contract for the sale of personal property by the terms of which the title of such personal property is retained in the vendor until the purchase price is paid in full.

Generally in the construction of a contract by a court, if the contract is unambiguous and clear, the major problem is the intention of the parties at the time they entered into the contract which must be determined from the four corners of the instrument, as has been variously stated so frequently in our opinions, and was most recently

repeated in *Zelinkoff v. Johnson,* 185 Kan. 489, 345 P. 2d 665, filed on November 7, 1959:

"Where a court is called upon to interpret a written instrument, the intent and purpose thereof are to be determined by a consideration of all the pertinent provisions and not by a critical analysis of a single isolated provision.

"Where a court is called upon to construe a written instrument, a reasonable rather than an unreasonable interpretation is favored by the law, and results which vitiate the purpose or reduce its terms to absurdity should be avoided." (Syl. ¶¶ 1, 2.)

Paragraph 4 of provision (*b*) of the contract is not an uncommon provision whereby if a buyer defaults, the seller of personal property under a conditional sales contract, has an option of retaking possession of the property or filing an action for the balance due on the contract price, together with any interest, at the time of the default. Before a seller can elect which remedy he will pursue under the option, it is imperative that the buyer default in the performance of at least one of the provisions of the contract which, by its terms, he is duty bound to perform. A similar situation of an election of remedies under an option in a conditional sales contract obtained in *Plow Co. v. Rodgers,* 53 Kan. 743, 37 Pac. 111, cited with approval in *Emporia Wholesale Coffee Co. v. Rehrig,* 173 Kan. 841, 843, 252 P. 2d 590.

The language of this conditional sales contract upon which plaintiffs predicated their action unambiguously and clearly provided in (*a*) how the purchase price would be paid if defendants complied with the duties placed upon them by the terms and provisions of the contract, and that in the event of default of defendants by reason of their failure or refusal to comply with those duties paragraph 4 of provision (*b*) became operative, as hereinbefore stated. No conflict existed between the two parts of the contract nor can more than one meaning be placed on the contract by reason of their inclusion therein.

The trial court was in error in his legal determination, in advance of trial, that the contract was ambiguous and such erroneous determination requires a reversal of this cause. A new trial is hereby granted, as to only the first cause of action, in conformity with the terms of the written conditional sales contract executed and signed by the parties. A new trial having been granted, determination of the remaining seventeen specifications of error and the interesting legal questions raised therein, is unnecessary. The function of an appellate court is not to predetermine and advise a trial court how

it should try and dispose of possible legal questions involved. Only the new trial itself can develop those questions.

Reversed and remanded for new trial on the first cause of action only.