UNITED STATES of America,
Appellant,

v.

Irene ESSLEY, Appellee.

Irene ESSLEY, Cross-Appellant,

v.

UNITED STATES of America,
Cross-Appellee.

Nos. 6334, 6335.

United States Court of Appeals
Tenth Circuit.

Nov. 8, 1960.

C., with him on the brief), for appellant and cross-appellee.

F. Paul Thieman, Jr., Tulsa, Okl., for appellee and cross-appellant.

Before MURRAH, Chief Judge, and BRATTON and PICKETT, Circuit Judges.

PICKETT, Circuit Judge.

Acting under the provisions of Section 17 of the Mineral Leasing Act of 1920, as amended, Ch. 599, 49 Stat. 674, 676, the Secretary of the Interior issued to the defendant, Irene Essley, four non-competitive oil and gas leases on tracts of public lands in Colorado. Each lease was for a period of five years, and contained a provision requiring that the lessee should pay "a rental of 50 cents for each acre or fraction thereof for the first lease year, and a rental of 25 cents for each subsequent lease year * * * ; Provided, That * * * no rental is required for the second and third lease years. * * *" The leases were issued in late 1944 and early 1945, and, with one exception,[1] no rental payments were made after the first year.

In 1959, the United States brought this action to recover rentals of 25 cents per acre for the 4th and 5th years of three of the leases, and for only the 5th year of the other lease. The defendant pleaded the Oklahoma statute of limitations, and also that the leases required the payment of only 25 cents for the 4th and 5th years of their terms, and not 25 cents per acre. On stipulated facts, the trial court held that the Oklahoma statute of limitations was not applicable, but construed the leases as requiring the payment of 25 cents per lease for the 4th and 5th years, and entered judgment in favor of the United States for a total amount of $2.93. Both parties have appealed. The Government's appeal presents the question of the rentals due for the 4th and 5th years of the lease terms, and the cross-appeal questions the trial court's action in holding that the Okla-

Hugh Nugent, Atty., Dept. of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Robert S. Rizley, U. S. Atty., Tulsa, Okl., and Roger P. Marquis, Atty., Dept. of Justice, Washington, D.

---

1. The Government's brief states that Mrs. Essley paid the 4th year rental due on one of the leases at the rate of 25 cents per acre.

homa statute of limitations was inapplicable.

■ It is well established in this circuit, and elsewhere, that in interpreting a written contract, the court should, as far as possible, place itself in the position of the parties at the time of its execution, and then, from a consideration of the instrument itself, its purposes and the circumstances surrounding its execution, ascertain the intention of the parties. Roosevelt Materials Co. v. Nolan Brothers, Inc., 10 Cir., 264 F.2d 807; Liberty Nat. Bank & Trust Co. v. Bank of America Nat. Trust & Sav. Ass'n, 10 Cir., 218 F.2d 831; Nevada Half Moon Min. Co. v. Combined Metals Reduction Co., 10 Cir., 176 F.2d 73, certiorari denied 338 U.S. 943, 70 S.Ct. 429, 94 L.Ed. 581; Leal v. American Bonding Co. of Baltimore, 10 Cir., 159 F.2d 782; New York Cas. Co. v. Sinclair Ref. Co., 10 Cir., 108 F.2d 65; Uinta Tunnel, Min. & Transp. Co. v. Ajax Gold Min. Co., 8 Cir., 141 F. 563. The intention of the parties is not to be deduced from any specific provision or fragmentary part of the instrument, but from its entire context. Utex Exploration Co. v. Garwood, 10 Cir., 246 F.2d 547; Phillips Petroleum Co. v. McCormick, 10 Cir., 211 F.2d 361; F. W. Woolworth Co. v. Petersen, 10 Cir., 78 F.2d 47; Uinta Tunnel, Min. & Transp. Co. v. Ajax Gold Min. Co., supra.

■ Section 17 of the Mineral Leasing Act of 1920, as amended, provided that "such leases shall be conditioned upon the payment by the lessee * * * in advance of the rental to be fixed in the lease of not less than 25 cents per acre per annum * * *." The Regulations adopted by the Secretary of the Interior provided that the first year's rental should be 50 cents per acre, and the rental for succeeding years should be 25 cents per acre, with the second and third years' payments waived. 5 Fed.Reg. 2864 (1940), (now 43 C.F.R. § 192.80).[2] The

authorities are in agreement that unless the contract discloses a contrary intention, an existing statute will be read into it to the same effect as an express provision. Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413; Northern Pacific Ry. Co. v. Wall, 241 U.S. 87, 36 S.Ct. 493, 60 L.Ed. 905; Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681; Meyer v. City of Eufaula, Okl., 10 Cir., 154 F.2d 943.

The statute and the regulations were also made part of the leases by specific reference. The leases recited that they were entered into under, pursuant and subject to the terms and provisions of the Mineral Leasing Act "which is made a part hereof." The lessee agreed to abide by and conform to any and all reasonable regulations of the Secretary of the Interior then or thereinafter in force, "all of which regulations are made a part of this lease; Provided, that such regulations are not inconsistent with any express and specific provision hereof; * * * ."

■■ The first sentence of the rental section of the leases provided that the first year's rental should be 50 cents per acre, and also fixed the payments to be paid for subsequent years. It would be wholly unrealistic to hold that the rentals for subsequent years provided for in the same sentence were limited to a total payment of 25 cents per lease because the term "per acre" was not included there. To hold otherwise would, except for the first year, require the same rental on leases irrespective of the amount of land leased.[3] Furthermore, the Secretary of the Interior was without authority to lease for less than 25 cents per acre. Considering the leases as a whole, together with the Mineral Leasing Act of 1920, as amended, and the Regulations adopted pursuant thereto, it is too clear for any doubt that the parties intended

---

2. The statutory authority for this waiver was contained in the Act of July 8, 1940, Ch. 548, 54 Stat. 742.

3. To illustrate, the acreages included in the different leases to the defendant were: 960, 2121.96, 408, and 920.

the rentals for the 4th and 5th years to be 25 cents per acre, and not 25 cents per tract of land.[4]

■ With respect to the defense that the action is barred by the Oklahoma statute of limitations, it is a well established rule that, without a clear manifestation of Congressional intent, the United States is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283; Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224; United States v. Nashville, C. & St. L. Ry. Co., 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81; United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194; United States v. De Queen & Eastern R. R. Co., 8 Cir., 271 F.2d 597; United States v. First. Nat. Bank, 10 Cir., 124 F.2d 484.

■ There is no merit to the proposition asserted by the defendant that the United States, in leasing its public domain, acts in a proprietary capacity, and therefore is subject to state statutes of limitations. It has frequently been stated that the United States, in performing the functions which are reserved to it in the Constitution,[5] acts only in a governmental capacity. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; Federal Land Bank of St. Paul v. Bismarck Lumber Co., 314 U.S. 95, 62 S.Ct. 1, 86 L.Ed. 65; Pittman v. Home Owners' Loan Corp., 308 U.S. 21, 60 S.Ct. 15, 84 L.Ed. 11; Graves v. People of State of New York ex rel. O'Keefe, 306 U.S.

466, 59 S.Ct. 595, 83 L.Ed. 927. Speaking of oil and gas leases executed by the Secretary of the Interior under the Leasing Act of 1920, as amended, this court, in United States v. Ohio Oil Co., 10 Cir., 163 F.2d 633, 639–640, certiorari denied 333 U.S. 833, 68 S.Ct. 459, 92 L.Ed. 1117, rehearing denied 333 U.S. 865, 68 S.Ct. 738, 92 L.Ed. 1143, said:

"We agree with the appellee that in all of his transactions with the lessee, the Secretary acted for and on behalf of the Government in a proprietary capacity, and that his contractual powers were measured by the basic enabling Act and the amendments thereto. He was specifically authorized to contract on behalf of the Government with its citizens, and in so doing, he was fulfilling the constitutional power of Congress to dispose of, and make all needful regulations respecting, the territory of the United States. Art. 4, Sec. 3, Clause 2 of the Constitution. His powers were not strictly ministerial. He was charged with safeguarding the public interest, and was thus authorized not only to execute a naked lease contract, but was also originally authorized to prescribe necessary and proper rules and regulations to accomplish the purposes of the Act as amended."

Of course the United States is bound by the terms of a contract lawfully entered into, but in executing an oil and gas lease to a portion of its public domain, it is performing a governmental function, not a proprietary function, as indicated by the quoted language.

The judgment is reversed, and remanded with instructions to enter judgment according to the views herein expressed.

4. There is no denial of the Government's statement that Mrs. Essley paid the fourth year's rental due on one of the leases at 25 cents per acre, and the explanation for her failure to pay this rental on other occasions is found in the fact that one of her principal defenses was that she had effectively cancelled the leases prior to the time additional rentals became due.

5. United States Constitution, Art. 4, Sec. 3, Clause 2. In Knight v. United Land Association, 142 U.S. 161, 181, 12 S.Ct. 258, 264, 35 L.Ed. 974, the court said: "The secretary is the guardian of the people of the United States over the public lands."