**TEXACO, INC., a Delaware corporation, Appellant,**

v.

**Wilmer M. HOLSINGER and Mary L. Moyer, Appellees.**

**No. 7708.**

United States Court of Appeals Tenth Circuit.

Sept. 1, 1964.

Rehearing Denied Oct. 2, 1964.

Leonard O. Thomas, Kansas City, Kan.
(Lee E. Weeks, J. D. Lysaught, Richard
Millsap, Robert H. Bingham, Ervin G.
Johnston, Roger D. Stanton, Kansas City,
Kan., Philip R. Wimbish and William E.
Lester, Tulsa, Okl., on the brief), for
appellant.

Robert E. Fabian, Kansas City, Kan. (John E. Blake, Bill E. Fabian and John E. Blake, Jr., Kansas City, Kan., on the brief), for appellees.

Before MURRAH, Chief Judge, and PICKETT and HILL, Circuit Judges.

HILL, Circuit Judge.

This declaratory judgment action was originally commenced in the state district court of Kansas to determine the rights and obligations of the parties under a real estate lease executed on June 10, 1953. The case was removed to the United States District Court for the District of Kansas, where a trial to the court was had and resulted in a judgment adverse to the appellant, Texaco, Inc. It appeals.

The stipulated facts show that, by the terms of the lease in question, the appellees leased a described tract of land, located in Johnson County, Kansas, to the appellant for an initial term of 10 years at an agreed rental of $140 per month. This lease required that Texaco build a modern service station on the premises at a cost of at least $18,000, and provided that the 10 year term should begin after construction of the station or, in any event, not later than January 1, 1954. In accordance with the contract, Texaco built a service station upon the premises at a cost of $40,700 and the initial term of the lease commenced on January 1, 1954. These premises have been maintained in good condition by Texaco and it has installed equipment worth $4,800. Texaco paid the required rent and, except as hereafter discussed, complied with all of the obligations imposed upon it by the lease.

The dispute in this case is over the interpretation to be given to paragraph 12 of the lease, which is entitled "Option to Extend Term". Under sub-paragraph (a) of that paragraph, the appellees, as lessors, granted to Texaco, as lessee, the " * * * right and option to extend this lease for six successive periods of five years each at the following rental: One Hundred and Forty Dollars ($140.-00) per month, payable monthly in ad-

vance. * * *" and Texaco was required to notify the lessees, in writing, of its election to extend the lease at least 60 days prior to the date of termination of the lease. Sub-paragraph (b) provides: "If at any time during the term of this lease or any extension or renewal provided for herein, lessor shall receive a bona fide offer to lease the demised premises for a term to begin subsequent to the present demised term or such extension or renewal, and the lessor desires to accept such offer, lessor will immediately submit to lessee a written copy of such proposed lease with a full disclosure of the terms and provisions thereof and lessee shall have thirty (30) days after receipt thereof in which to elect to lease said premises upon the same terms and provisions contained in such proposed lease." The last provision of paragraph 12 is sub-paragraph (c), which states: "In the event lessee is granted an option to extend under the provisions of paragraph (12) (a), it is agreed that if lessee does not in any instance elect to lease said premises in accordance with the provisions of paragraph (12) (b), such failure shall in no way limit or affect lessee's right and option to extend this lease as provided in paragraph (12) (a)."

In February, 1963, the appellees received a bona fide offer to lease the premises at a monthly rental of $325 and, on February 11, 1963, they notified Texaco of such offer by letter from their attorney. A photostatic copy of the proposed lease was enclosed in the letter and Texaco was requested to advise them within 30 days " * * * as to whether or not you shall elect to lease said premises on the same terms as are contained in said proposal." Texaco refused saying that its lease with appellees " * * * contains six successive five-year options to extend in favor of our company, and in all probability our company will timely exercise the first of its said extension options and if and when it does this will continue our right to possession under our lease as supplemented." Appellees then commenced this action.

The trial court concluded that paragraph 12 was ambiguous and should be construed against Texaco, which prepared the lease; that paragraph 12(c) was repugnant to 12(a) and should be deleted from the lease; and it was implicit in paragraph 12(b) that, unless Texaco exercised the option to lease on the same terms as offered by a third party, the appellees had the right to lease to such third party.

■■ At the outset, we agree with the parties that the lower court erroneously concluded that paragraph 12(c) of the lease was repugnant to paragraph 12(a). However, that does not necessarily require a reversal of the judgment. It is well settled that a judgment, which is correct in ultimate effect, will not be disturbed on appeal even though the lower court relied upon a wrong ground or gave an untenable reason for its action. The issue on appeal is the correctness in ultimate effect of a judgment and not the reason or reasons given for it by the trial court. If the judgment is sustainable upon any legal basis, it will be upheld on appeal despite the erroneous or untenable reasons given by that court for its entry. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; J. E. Riley Investment Co. v. Commissioner, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36; Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; Kaye v. Smitherman, 10 Cir., 225 F.2d 583, cert. denied, 350 U.S. 913, 76 S.Ct. 197, 100 L.Ed. 800; First National Bank in Wichita v. Luther, 10 Cir., 217 F.2d 262; Utah Copper Co. v. Railroad Retirement Board, 10 Cir., 129 F.2d 358, cert. denied, 317 U.S. 687, 63 S.Ct. 258, 87 L.Ed. 551. We must, therefore, determine from the record whether the judgment below is sustainable upon any legal basis and, if so, it must be upheld by this court.

■ Under the law of the State of Kansas, the place of making and performance of the lease in question, a contract that does not contravene legal principles, applicable statutes or the public policy of the state should be construed and interpreted in such a manner as to carry out and give effect to the mutual intention of the parties. Springer v. Litsey, 185 Kan. 531, 345 P.2d 669; Zelinkoff v. Johnson, 185 Kan. 489, 345 P.2d 665; Moore v. Jones, 10 Cir., 215 F.2d 719, 720, and Kansas cases therein cited. Unless a written instrument is ambiguous or vague in its terms, that intention must be determined from the instrument as a whole or, as is often stated, from its "four corners", which simply means that all of the language used anywhere in the instrument should be taken into consideration and construed in harmony with other provisions of the contract. Weiner v. Wilshire Oil Company of Texas, 192 Kan. 490, 389 P.2d 803; Borgen v. Wiglesworth, 189 Kan. 261, 369 P.2d 360; Kittel v. Krause, 185 Kan. 681, 347 P.2d 269; Smith v. Russ, 184 Kan. 773, 339 P.2d 286; Froelich v. United Royalty Company, 179 Kan. 652, 297 P.2d 1106; Dipo v. Ringsby Truck Lines, 10 Cir., 282 F.2d 126; Moore v. Jones, supra; Filtrol Corp. v. Loose, 10 Cir., 209 F.2d 10. An ambiguity does not appear until the application of the rules of interpretation to the face of the instrument leaves it genuinely uncertain as to which of two or more meanings is proper. Weiner v. Wilshire Oil Company of Texas, supra; Dearborn Motors Credit Corporation v. Neel, 184 Kan. 437, 337 P.2d 992; Custom Built Homes Co. v. Kansas State Commission of R. & T., 184 Kan. 31, 334 P.2d 808, cert. denied, 361 U.S. 816, 80 S.Ct. 55, 4 L.Ed.2d 62.

Appellant contends that there is no ambiguity in the provisions of paragraph 12 and that the intention of the parties is clearly expressed within the four corners of the instrument. Its argument is this: Paragraph 12(a) of the lease gives it the "right and option" to extend the lease for six successive periods of 5 years each; paragraph 12(b), which does not in any way conflict with 12(a) and which was inserted into the lease for its exclusive benefit, does not deal with options to extend the lease at all but, rather, is concerned solely with

an option on its part to enter into a new lease to commence at the termination of the lease in question, as extended under 12(a), and requires the appellees to submit to it any proposed lease offer or offers they may receive in that regard for the purpose of giving it the option of accepting or rejecting a new lease on the same terms and conditions; and, in any event, the clear and concise language of paragraph 12(c) gives it the rights granted in 12(a), notwithstanding the provisions of 12(b) or any refusal on its part to accept any offer that might be made to lease the demised premises by a third party. In short, Texaco says that it has the right and option to extend the lease for a total of 30 years beyond the ten-year primary term by virtue of the provisions of 12(a), that this right and option is further secured by 12(c) and that, under 12(b), it has the right to extend the lease even further by electing to enter into a new lease with appellees under the same terms and conditions as may be set forth in a new lease proposal from a third party.

It is true that paragraph 12(a) standing alone, is the familiar lease clause by which the lessee is given an option to extend the primary term of the lease for a specified period or periods of time, provided that such lessee gives the requisite notice to the lessor of its election to exercise the lease option. Thus, there can be no doubt that if the lease contained only paragraph 12(a), Texaco would have the unconditional right and option to extend the ten-year primary term of the lease in question for 6 successive periods of five years each at a monthly rental of $140, provided only that it gave the lessors, appellees, 60 days notice of its election to exercise each of the options. However, as we view it, paragraph 12(b) is an inseparable and integral part of the "Option to Extend Term" provisions of the lease and, as such, has nothing whatsoever to do with an option to enter into a new lease at the expiration of the one involved in this case. That paragraph is concerned with the lease in question and it qualifies and conditions the rights granted in paragraph 12(a) by providing that, if at any time during the primary term of the lease or any extension or renewal thereof, the lessors receive a bona fide offer to lease the premises from a third party which they desire to accept, they shall submit a written copy of that proposed lease to Texaco, make a full disclosure of its terms and provisions and Texaco then has 30 days " * * * in which to elect to lease said premises upon the same terms and provisions contained in such proposed lease." Despite these provisions, paragraph 12(c) purports to give appellant the absolute and unconditional right to continue in possession of the premises under the options set forth in 12(a).

There is therefore an ambiguity in the "Option to Extend Term" provisions of paragraph 12. Indeed, 12 (c) is in conflict with, and repugnant to, the provisions of 12(b). Under these circumstances, the court must place itself in the position of the parties at the time the lease was executed and, in order to determine the mutual intention of the parties, consider the lease, its purpose and the circumstances surrounding its execution. Weiner v. Wilshire Oil Company of Texas, supra; Dearborn Motors Credit Corporation v. Neel, supra; Custom Built Homes Co. v. Kansas State Commission of R. & T., supra; United States v. Essley, 10 Cir., 284 F.2d 518. As this court said in Moore v. Jones, supra, 215 F.2d at 721: " * * * where the language used is ambiguous and the intention of the parties cannot be ascertained therefrom the background against which the contract was executed and the circumstances attending its execution should be taken into consideration as an aid to the ascertainment of such intent. * * * " In so doing, we must determine the intention of the parties and the purpose of the contract from a consideration of all of the pertinent provisions of the lease and not by a critical analysis of a single isolated provision. Weiner v. Wilshire Oil Company of Texas, supra; Zelinkoff v. Johnson, supra; K.

& E. Drilling, Inc. v. Warren, 185 Kan. 29, 340 P.2d 919; Geier v. Eagle-Cherokee Coal Mining Company, 181 Kan. 567, 313 P.2d 731; United States v. Essley, supra. We must also follow the rule that in placing a construction upon a written instrument reasonable, rather than unreasonable, interpretations are favored by the law and results which vitiate the purpose or reduce the terms of the contract to an absurdity should be avoided. Weiner v. Wilshire Oil Company of Texas, supra; Zelinkoff v. Johnson, supra; Geier v. Eagle-Cherokee Coal Mining Company, supra.

In our opinion the only reasonable construction of paragraph 12, when considered in the light of the lease as a whole, is that Texaco's option to extend the lease under the provisions of 12(a) is qualified and conditioned by the provisions of 12(b), which require it to elect to lease the premises upon the same terms and conditions as those of any bona fide third-party offer that the appellees may receive and desire to accept at any time during the primary term of the lease or any extension or renewal thereof. This necessarily means that if appellees have received a bone fide offer they desire to accept, Texaco must at the expiration of the primary term or any extension or renewal thereof, as the case may be, either elect to lease the premises upon the same terms and conditions as the offer or it must relinquish possession of the premises. This clearly was the intention of the parties at the time they entered into the lease. Otherwise, the provisions of 12(b) would be vitiated and reduced to an absurdity since the rights contained therein would be deleted from the lease and would become meaningless and have no effect at all. A further indication of the intention of the parties that appellant was not to have an unconditional option to extend the lease may be found in the "Option to Purchase" provisions of paragraph 11. There, the appellant, as lessee,

is given the exclusive right at its option " * * * to purchase the demised premises * * * at any time during the term of this lease or any extension or renewal thereof * * * on the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. * * *" These provisions are almost identical with the provisions of paragraph 12 except that they grant an unconditional option to purchase. If the parties had intended for Texaco to have an unconditional option to extend the term of lease, they could have stopped with 12(a) but they did not do so. Instead, 12(b) was inserted thereby indicating that the option to extend the lease was a conditional one.

It is suggested that the interpretation which we have given to the lease has the ultimate effect of deleting 12(c) from the contract. That may be but the lease was prepared by Texaco and, under the general rule, it must be strictly construed against Texaco and liberally toward the other party, appellees. Any doubts must be resolved against the former and in favor of the latter. Smith v. Russ, supra; Dearborn Motors Credit Corporation v. Neel, supra; Francis v. Shawnee Mission Rural High School, 161 Kan. 634, 170 P.2d 807; Bankers' Mortgage Co. of Topeka v. Dole, 130 Kan. 367, 286 P. 258. Furthermore, the provisions of 12(c), as they relate to 12(a) under appellant's construction, are general provisions as to the option to extend the lease and those of 12(b) are specific provisions on the same subject. It is a general rule that where general and specific provisions conflict, as they do here, the general must yield to the specific since the latter express more exactly the intention of the parties. Smith v. Russ, supra; 12 Am. Jur., Contracts, § 244, pp. 779–780; 17A C.J.S. Contracts § 313, pp. 173–177; 3 Corbin on Contracts, § 547, page 176.

The judgment is affirmed.