Ethel IMEL et al., Plaintiffs-Appellants,

v.

**ZOHN MANUFACTURING COMPANY,** formerly known as Gross Wholesale Tailors, Inc., a Colorado corporation, et al., Defendants-Appellees.

No. 72–1592.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 29, 1973.

Decided June 21, 1973.

Rehearing Denied Aug. 2, 1973.

———◆———

Craig A. Murdock, Denver, Colo., for plaintiffs-appellants.

Robert Bugdanowitz, Denver, Colo., for defendant-appellee Zohn Manufacturing Co.

Edward J. Scheunemann, Denver, Colo., for defendants-appellees Local 263, Amalgamated Clothing Workers of America and Midwest Regional Joint Board.

John A. Criswell, Englewood, Colo., for defendant-appellee Amalgamated Clothing Workers of America, AFL-CIO.

Before HILL and BARRETT, Circuit Judges, and TALBOT SMITH, Senior District Judge.[*]

PER CURIAM.

The controversy before us arose between three plaintiff-employees and four defendants: their employer, Zohn Manufacturing Company (Zohn), Local 263, Amalgamated Clothing Workers of America, the plaintiffs bargaining representative (Local 263), Midwest Regional Joint Board, Amalgamated Clothing Workers of America, AFL–CIO (Joint Board), and Amalgamated Clothing Workers of America, AFL–CIO (Amalgamated). Jurisdiction was asserted, in part, under Section 301 of the Taft-Hartley Act (29 U.S.C. § 185). The matter comes to us upon the dismissal of the complaint resulting from rulings upon Motions for Summary Judgment filed by defendant Unions and a Motion to Dismiss incorporated in defendant Zohn's responsive pleading to the action.[1]

The complaint embodies four separate claims for relief in a court action, despite the existence of a contractual grievance remedy, as well as constitutionally-based internal appeal procedures within the unions themselves. The controversy stems from defendant Zohn's alleged failure to pay the wage claims of the plaintiffs. Zohn had entered into a collective bargaining agreement with Local 263 and the Joint Board covering plaintiffs' wages and working conditions. It had allegedly breached the agreement, specifically by underpaying the plaintiffs. Plaintiffs thereupon entered a grievance but, it is alleged by plaintiffs, Zohn, Local 263, and the Joint Board improperly and unlawfully refused to process plaintiffs' wage grievance through the grievance settlement and arbitration procedures set up in the collective bargaining agreement, despite plaintiffs' demands therefor.[2] This refusal, it is alleged, resulted from improper concert of action among the defendants, malicious and willful in its motivations.

In Vaca v. Sipes, 386 U.S. 171, 87 S. Ct. 903, 17 L.Ed.2d 842 (1967) the Supreme Court held that employees subject to a union contract might institute suit against labor unions in those situations wherein it was claimed that the employer had violated the provisions of the union contract and the union had violated its duty of fair representation to the employees. It was further held that an employee charging a union with violating the duty of fair representation would be not be required to exhaust the contract's grievance procedures, provided that under the contract the union has the sole power to invoke those procedures and that the employee has been

[*] Eastern District of Michigan, sitting by designation.

1. After argument upon the motions the complaint was dismissed. The trial court's written Judgment of Dismissal dated July 7, 1972, was based upon the grounds that "applicable administrative procedures available to plaintiffs have not been exhausted." A later Judgment of Dismissal dated July 20th varies somewhat in phraseology, referring to failure to follow "administrative procedures adopted in the collective bargaining agreement," but in view of the court's holding from the bench that plaintiffs "must follow and complete the administrative procedures provided by the Constitution, by-laws of their Union" (App. Vol. I, p. 22) we do not regard the differences in phraseology as material. cf., Texaco, Inc. v. Holsinger, 336 F.2d 230 (10th Cir. 1964).

2. Arbitration of plaintiffs' job-classification issue had been agreed to "by the Company and your Union" (Ex. G) but plaintiffs insisted upon arbitration of the wage issue as well (Ex. H.)

prevented from utilizing these procedures through the union's wrongful conduct, the circumstances indicating that the union's conduct was "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, supra, at 190, 87 S.Ct. at 916.

The defendant Unions before us each filed a motion for summary judgment, supported by affidavit and other documentary evidence, setting up, among other grounds, that plaintiffs had failed to exhaust the internal union remedies granted them by the constitutions of the unions involved.

■ The remedies provided under the constitution and by-laws of the Joint Board and Amalgamated are straightforward and comprehensive. The plaintiffs are members of Local 263. As such they are bound by the constitution and by-laws of the Joint Board and Amalgamated, under which Local 263 is an affiliated and subordinate body.[3] Furthermore, as such members they have both the "obligations and privileges" enunciated in the constitution and by-laws.[4]

In addition each member authorizes "the Amalgamated and/or his local union or joint board" to act as his agent in order to "represent and bind him in the presentation, adjustment and settlement of all grievances." [5]

It is also provided that each member has the right of appeal set forth in Art. XII "from any action or failure to act of his local union or joint board in the presentation, adjustment and settlement of any such grievance, complaint or dispute . . .," in the exercise of any local or joint board's original or appellate jurisdiction under that Constitution. As we read the instruments before us we take it that the appellate procedure is to appeal first to the local level, then to the joint board, then to Amalgamated itself.

However, Section 2 of Article XII (the Appeals Article) permits a direct appeal to the General Executive Board of Amalgamated without undertaking the intermediate steps. And, finally Section 5 of Article XII specifically requires any member to exhaust the appeal procedure provided by the Constitution before instituting "any civil action, suit or proceeding in any court against the Amalgamated, any of its local unions or joint boards . . . "

Such exhaustion of the internal appeal procedures was not had in this case. The reasoning therefor was that the officers and agents of Local 263, and the Joint Board, had prior knowledge of the facts involved in the complaint. However that may be, the fact remains that the officers of Amalgamated were in no way involved,[6] no charges had been made against them, there is neither allegation nor proof that resort to them would have been futile, and there appears on the record before us no justification for plaintiffs' failure to appeal to Amalgamated itself, as authorized by Article XII, Section 2, supra, of the Constitution.

■ We recognize that here we deal with a question of the exhaustion of internal constitutional remedies, as distinguished from contractual remedies, such as arbitration. Differences are, of course, present, thus the one remedy may arise by contract, the other by membership. Yet there is a basic, underlying principle involved here, upon which much of labor-management harmony turns, namely, staying the hand of "judicial interference with the internal affairs of a labor organization until it has had at least some opportunity to resolve disputes concerning its own internal affairs." Brady v. Trans World Airlines, 401 F.2d 87 (3rd Cir. 1968),

3. Art. VII, Amalgamated Constitution.

4. Id. Art. IX, Sect. 3.

5. Id. Art. IX, Sect. 9b.

6. Such was conceded at oral argument by plaintiffs' counsel: "It is true we do not suggest that any employee or officer of Amalgamated as such had anything to do with the events which led to the filing of this Complaint." Record, Vol. I, p. 11.

cert. den., International Ass'n of Machinists v. Brady, 393 U.S. 1048, 89 S. Ct. 680, 21 L.Ed.2d 691 (1969). Here we find in the governing documents of the Unions provisions for careful review of grievance procedures, including an expedited appeal to the General Executive Board of Amalgamated. The by-passing of the carefully enunciated review measures, absent a clear and positive showing of futility, can only promote disharmony in the field of labor-management relations. Whether a union's "opportunity to resolve disputes concerning its own internal affairs" arises and is accomplished through contractual or constitutional means should not control attainment of the objective sought. A reasonable opportunity should be afforded in either event.[7] Such, in fact, was the holding in the case of Harrington v. Chrysler Corporation, 303 F.Supp. 495 (E.D., Mich.1969) where it was held that,

"It appears from the facts presented that the extra-judicial remedies available to plaintiff Harrington are two-fold in nature: (1) those procedures set forth in the collective bargaining agreement between Local Union 412 and Chrysler Corporation, and (2) those intra-union appeal procedures set forth in Article 32 of the Constitution of the International Union. It is no excuse that it would have been futile to present plaintiff's grievances to the local officers. The plaintiff was obliged to comply with the intra-union appeal procedure; and absent such compliance, the courts lack jurisdiction to hear the complaint." [cited cases omitted]

"In the case at bar, plaintiff Harrington sought redress only by means of the grievance machinery set forth in the local collective bargaining agreement between Local Union No. 412 and Chrysler Corporation. He did not avail himself of the intra-union appeal procedures to challenge Local 412's alleged arbitrary action in refus-

ing to represent the plaintiff with respect to the grievance. The intra-union appeal procedures set forth in Article 32 of the Constitution of the International Union require the aggrieved member to submit his appeal in writing within a specified time period following the alleged action and further require that all remedies and appeals under the International's bylaws be exhausted prior to commencement of any appeal to a civil court or government agency for redress." 303 F.Supp. at 497.

To the same effect see Bsharah v. Eltra Corporation, 394 F.2d 502 (6th Cir. 1968); Dill v. Wood Shovel & Tool Co., 68 LC § 12,685 (D.C.Ohio 1972); Harris v. Continental Aviation & Engineering Corp., 67 LC § 12,393 (D.C.Ohio 1972); See v. U. A. W. Local 417, 69 LC § 13,165 (D.C.Mich.1972).

It is clear that in the matter before us there has thus been a failure to exhaust the internal remedies available to all members under the Constitution, such exhaustion being a prerequisite to the institution of any civil action. The trial court's grant of defendant Union's motions for summary judgment accordingly is affirmed.

With respect to defendant Zohn, the employer, the case stands on a different footing. The gravamen of the plaintiffs' cause of action is the alleged corrupt and concerted failure of defendant unions and the employer to undertake and carry through to completion an honest and fair arbitration of their wage claims, properly initiated by them, but "at the higher stages" of the grievance and arbitration procedure "frustrated by the concerted action of Zohn and the defendant unions," citing Vaca v. Sipes, supra. Zohn replies that the agreements between the unions and the company resulting in an abandonment of arbitration of the wage claims were honest and fair, and, moreover, within their permissible power to screen grievances, also

---

7. cf. exhaustion requirements in the Landrum-Griffin Act, 29 U.S.C. § 411.

relying on Vaca v. Sipes, supra. Zohn urges, as well, that plaintiffs' allegations of wrongdoing are completely conclusionary and without factual support. Thus, with respect to plaintiffs' allegations that defendants had agreed that the grievances submitted by plaintiffs "would not be processed in accordance with the provisions" of the collective bargaining agreement,[8] Zohn argues that no details are provided as to the procedures in the collective bargaining agreement, "or in what manner the parties agreed to the contrary," asserting that "a litigant must give the Court some idea of the basis of filing an action" other than mere conclusions.

 The obstacles to affirmance of a dismissal of a complaint on such grounds are formidable. The pleading deficiencies, should such they be, are not fatal to plaintiffs' cause of action. Where a complaint gives fair notice of the grounds for the plaintiffs' claims, and it cannot be said with certainty that proof of any facts in support thereof would entitle the plaintiffs to no relief, it should not be dismissed for uncertainty. 2A Moore's Federal Practice, ¶12.08, at 2271–2285 (2d ed. 1968). The pre-trial and discovery devices now available offer sufficient protection against ambush at trial. The Supreme Court's ruling in Czosek v. O'Mara, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970) makes this clear, if any doubt based upon other precedents, had theretofore existed. The Court held,

"Although the complaint was not as specific with regard to union discrimination as might have been desirable, we deem the complaint against the union sufficient to survive a motion to dismiss. As the Court of Appeals indicated, 'where the courts are called upon to fulfill their role as the primary guardians of the duty of fair representation,' complaints should be construed to avoid dismissals and the plaintiff at the very least 'should be given the opportunity to file supple-

mental pleadings unless it appears "beyond doubt" that he cannot state a good cause of action.'" 397 U.S. at 27, 90 S.Ct. at 772.

The plaintiffs here, as well, should be given a similar opportunity.

The dismissal of the Complaint is accordingly reversed and the case remanded. As we have held heretofore, the grant of the motions for summary judgment is affirmed, but the grant of Zohn's Motion for Dismissal is reversed and upon remand plaintiffs should be allowed to amend their complaint to allege circumstances supporting their assertion that attempts to pursue their grievances would be futile.

Under the views we have taken of the case we do not reach the additional issues presented.

So ordered.

Affirmed in part and reversed in part for further consideration not inconsistent with this opinion.

3. Paragraph X, Complaint.