Richard Samuel NIGRO, et al.,
Respondents,

v.

The FIRESTONE TIRE & RUBBER
CO., Appellant.

No. WD 32937.

Missouri Court of Appeals,
Western District.

Oct. 12, 1982.

Stephen T. Adams, Penni L. Johnson, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, for appellant.

William V. McLeese, James P. Tierney, Kansas City, for respondents.

Before KENNEDY, P.J., and WASSERSTROM and MANFORD, JJ.

MANFORD, Judge.

This is an action for declaratory judgment seeking construction and interpretation of a lease agreement. The judgment is affirmed.

Appellant's sole point in summary charges the trial court erred in its interpretation and construction of certain terms of the lease and the trial court failed to observe that appellant had exercised its option to renew.

Before setting forth the pertinent factual details and the specific applicable provisions of the lease, it is necessary to describe the procedural development in this case and reference the portion of the judgment from which this appeal lies. Appellant (lessee) filed this action for declaratory judgment asking the court to construe and interpret certain provisions within the lease. Pursuant to that, the parties submitted a stipulation of facts. The trial court entered partial summary judgment on that issue October 13, 1980. There remained an additional, but much narrower issue, that being whether a third party had made a bonafide offer to lease within the meaning of the Right of Refusal provision of the lease. The trial court heard testimony on this question and ruled that it was a bona fide offer. The trial court then entered final judgment to respondents from June 9, 1981. On this appeal, only the portion of the court judgment granting partial summary judgment as to the construction and interpretation of specific provisions of the lease is challenged.

The record reveals the lease in question originated on June 28, 1963, between appellant as lessee and the Rock Springs Realty as lessor. The property is part and parcel of the Waldo Shopping Center in Kansas City, Missouri. The lease commenced June 1, 1964, with a base term of 15 years. In addition, the lease provided three renewal options, each of 5 years duration, and a first refusal to lease provision. Respondent is the successor lessor to Rock Springs Realty. The three renewal options plus the first refusal to lease provision provide the basis for the dispute and, hence, the basis of this appeal. Those provisions read, as follows:

"32. RENEWAL.

TENANT shall have the right to renew or extend the within lease for a period of five (5) years following the expiration of the original term hereof, at a rental rate the same as for the original term hereof and under the same terms and conditions as for the original term, as set out herein, except for this option to renew or extend. In the event TENANT exercises this option to renew or extend, written notice thereof shall be given LANDLORD at least six (6) months prior to the commencement of such renewal or extension."

The second option to renew reads as follows:

"33. RENEWAL.

TENANT shall have the right to renew or extend the within lease for a period of five (5) years following the expiration of the renewed or extended term provided for in Section 32 hereof, at a rental rate the same as for the original term hereof and under the same terms and conditions as for the original term as set out herein, except for the option to renew or extend. In the event TENANT exercises this option to renew or extend, written notice thereof shall be given LANDLORD at least six (6) months prior to the commencement of such renewal or extension."

"34. RENEWAL.

TENANT shall have the right to renew or extend the within lease for a period of five (5) years following the expiration of the renewed or extended term provided for in Section 33 hereof, at a rental rate the same as for the original term hereof and under the same terms and conditions

as for the original term as set out herein, except for the option to renew or extend. In the event TENANT exercises this option to renew or extend, written notice thereof shall be given LANDLORD at least six (6) months prior to the commencement of such renewal or extension."

"35. FIRST REFUSAL TO LEASE.

During TENANTS occupancy under this lease, or its renewal or extension, TENANT shall have first refusal option to lease the demised premises only for an additional term upon the same terms and conditions as contained in any valid, acceptable, bona fide lease offer LANDLORD, or any subsequent LANDLORD may receive. TENANT shall have fifteen (15) days after receipt from LANDLORD of written notice of such offer (with certified full written statement of such offer or certified copy thereof) within which time to exercise said option and accept any such leave."

The record shows appellant, pursuant to provision No. 32 above, notified respondent of the exercise of said option. The notice was in writing (dated November 7, 1978) and the notice was received by respondent November 13, 1978. The parties do not dispute the timely exercise of the option, nor that it complied with the requirements of provision No. 32 above. The original term of the lease was to expire May 31, 1979, and the renewal option notified respondent of its commencement effective June 1, 1979.

On November 28, 1978, respondent notified appellant that it had received an offer to lease the premises for a term commencing June 1, 1979. Respondent advised appellant that the notice of the third party lease offer was in conformity with provision No. 35 above. The trial court, in a separate hearing, determined that this third party lease offer was a bona fide offer, as mandated by provision No. 35.

On December 5, 1978, confirming an earlier telephone conference, appellant notified respondent that it was not accepting the lessee proposal. In addition, appellant ad-

vised respondent that it had already exercised its option and that appellant intended to occupy the premises through May 31, 1984. Respondent filed this action on April 13, 1979, requesting the court to construe and interpret the lease. Respondent asked the trial court to interpret the true meaning of provisions Nos. 32 through 35 and to declare the lease terminated at the end of the original term, May 31, 1979. Respondents further requested that the trial court declare appellant had no options to renew, and by reason of failure to comply with the provisions of No. 35, appellant had no rights to any additional term in any event.

Respondent filed a motion for summary judgment based upon the stipulation of facts on October 11, 1979. On November 5, 1979, appellant filed a cross motion for summary judgment. Respondent then filed a withdrawal of its motion for summary judgment and filed, in lieu thereof, its motion requesting the court to construe and interpret the lease.

The trial court, on October 13, 1980, entered a partial summary judgment declaring that provision No. 35 conditioned appellant's option to extend the lease, thus rendering provision No. 35 operable throughout the original term of the lease and for any extended period. Appellant filed a motion to amend the partial summary judgment. That motion was overruled on December 4, 1980. Following the above developments, the cause was transferred to another division of the circuit court (16th Judicial Circuit) and determination of whether the third party lease proposal was bona fide was entered. The circuit court entered final judgment July 9, 1981. This appeal followed.

On this appeal, the trial court's construction and interpretation of the above lease provisions is challenged. Appellant contends the trial court's ruling failed to correctly interpret the intent of the parties and cites *Grantham v. Rockhurst University,* 563 S.W.2d 147, 150 (Mo.App.1978) which provides the general rule that the intent of the parties is to be ascertained by the courts from the contract between the parties and

to give effect to it. Appellant further contends that the court's ruling permits respondent, as lessor, to cut off the right of appellant as lessee at its' "whim".

Appellant further argues that the "tone" of the lease agreement was to create a long-term lease with the original term of 15 years followed by three renewal or extension options of 5 years each. Appellant further contends that the four above provisions were placed within the lease for the benefit of the lessee, not the lessor. It is appellant's position that provision No. 35 neither states nor implies any benefit to the lessor.

Citing the following authority, *Valley Lane Corp. v. Bowen,* 592 P.2d 589, 591 (Utah 1979), declaring "first right of refusal" provision confers no right to lessee or any assurance of a new lease; *Schlusselberg v. Rubin,* 465 S.W.2d 226 (Tex.Civ.App. 1971), first right of refusal provision unenforceable because terms of rental were not agreed to; *Buck v. Mueller,* 207 Or. 169, 293 P.2d 736 (1956), first right of refusal and option to renew are not terms mutually repugnant; *Jamison v. Lindblom,* 92 Ohio App. 324, 110 N.E.2d 9 (1951), first refusal right rests upon lessor's willingness to again lease the premises; and *Landowners Co. v. Pendry,* 151 Kan. 674, 100 P.2d 632 (1940), first refusal right does not require lessor to release, appellant argues the ordinary meaning of a first refusal is not to allow the landlord or lessor opportunity to void other rights a lessee might have in the lease. It is further contended that a right of first refusal has been historically interpreted as granting continued occupancy for an additional term subject to the lessor's desire or willingness to continue the leasing of the premises.

As viewed against the contention above, appellant argues further that provision No. 35 addresses the time when appellant as lessee has the first right of refusal and grants a term additional to the renewal options found in provisions Nos. 32 through 34. Appellant, quoting from No. 35, "During TENANTS occupancy under this lease or its renewal or extension TENANT shall have first refusal option to lease the demised premises only . . . .", argues such language related to the time appellant could exercise its refusal rights. Appellant points out that, had the original term expired (May 31, 1979), or any renewal period had expired, or no renewal option had been exercised and respondent was presented a bona fide offer, respondent would have no obligation to submit the offer to appellant and appellant would possess no right of first refusal because such events and such circumstances would not have occurred during "TENANTS occupancy under this lease or its renewal or extension".

It is appellant's further position that the foregoing language of No. 35 squares precisely with the language within No. 35 which confirms that appellant's right of first refusal was intended to be for an *additional term.* Appellant then concludes that since it was granted an option for an *additional term,* such *term* could only be additional to those granted in provisions Nos. 32 through 34. In further support that this was the intent of the parties, appellant points out the order of the options followed by provision No. 35 within the instrument.

Appellant directs this court to other provisions of the lease in support of claimed intent and, more specifically, provision No. 46. Number 46, which, in summary, requires respondent to secure agreement from adjoining landowners to assure certain visability and unobstructed traffic flow. This same provision sets forth "LANDLORD shall furnish TENANT a signed or certified copy of this agreement and shall record the agreement so that it will run with the land. *The duration of the agreement shall be at least as long as the term of this lease plus the renewal options included herein"* (emphasis added). Appellant submits provision No. 46 as further proof of the intent of the parties that appellant would renew at the end of the original term and that the lease term, inclusive of renewals, would be 25 years.

Appellant further directs this court's attention to an amendment to the lease

agreed to by the parties under date of May 1, 1964, which specifies the dates of the original term (June 1, 1964) and the successive renewal dates of June 1, 1979, June 1, 1984, and June 1, 1989, if such options are exercised. It is appellant's argument that this amendment indicates the intent of the parties that the original term and all three successive renewals (if properly exercised) would "vest" prior to the first right of refusal provision No. 35. Appellant contends the original term plus provisions Nos. 32 through 34 are superior to and control provision No. 35, not the other way around. Appellant argues the parties would not have gone to such lengths and expressed, within the lease, the terms of the renewal options if the parties had contemplated that respondent could effectively terminate appellant's occupancy at any time by receipt of another offer to lease the premises.

Appellant further argues that if respondent's interpretation of No. 35 (and, at this juncture, the trial court's interpretation) creates the right to tender an offer to lease at any time during the original term of the lease or any renewal period, the effect would be to convert the lease to a tenancy at will. Appellant points out that provision No. 35 does not indicate any date when a proffered lease would commence or appellant's term would terminate if the offered lease were rejected. It is appellant's conclusion that, under the trial court's ruling, it could and would be compelled at any time during its occupancy to match the terms of any bona fide offered lease proposal, or in the alternative, have its lease terminated.

Appellant directs this court's attention to the fact that, prior to the tender of the lease offer, appellant exercised its option to renew. The record reveals no dispute between the parties that this had occurred. Appellant contends the trial court's ruling does not address this question and argues this point for the purpose of distinguishing this case from *Texaco v. Holsinger,* 336 F.2d 230 (10th Cir.1964), relied upon by respondent.

Respondent meets appellant's challenge by first agreeing that the construction question deals primarily with provisions Nos. 32 through 35. Respondent contends that the trial court ruled properly. In support of its position, respondent argues the lease agreement extends rights to both parties. Respondent argues that provision No. 35 is, in effect, controlling and conditions provisions Nos. 32 through 35. Respondent argues No. 35 was placed in the lease as a "safety valve" for the landlord to hedge against inflationary costs in lieu of a more common provision of escalation of rental payment based upon a cost of living or similar index. Respondent urges that the advantage to appellant of No. 35 over a more common escalator clause, is apparent. This court is advised that the advantage derives from the absence of a pre-determined rental rate and is contingent upon submission of a bona fide third party offer. Respondent also contends that to make a "string of renewals salable to a Landlord, when there are no fixed rent increases in the options, the lease conditions each option to renew on meeting (by the lessee-appellant) the bona fide rent offered by a third party."

Respondent further argues that, if provisions Nos. 32 through 34 are not conditioned by No. 35, then the tenant option "only for such an additional term" could relate only to some unascertainable time in the future. Respondent contends that the use of the word, 'additional' within the phrase, "only for an additional term", supports its conclusion that No. 35 controls Nos. 32 through 34. From this, respondent concludes the parties intended the following. If the landlord received a bona fide offer to lease during the original term and the term, under the offer, was to begin at the end of the original term, the tenant had only one option and that was "a first refusal option to lease the demised premises *only* for an additional term". If no such other offer was received, then the tenant had an option of a five year renewal upon the original terms and conditions. If, during the renewal period, no bona fide offer was received, the same procedure would be followed.

Respondent counters appellant's contentions under provision No. 46 by arguing that the amendment was for the purpose of establishing the term of the lease because the lease, in its original form, provided that the original term would commence when improvements were completed and " . . . . in the exercise of prudence the commencement of the option periods was established if they should be exercised, but this does not mean they would be exercised."

In response to appellant's contention that the court's ruling converts the lease to a tenancy at will, respondent argues that the court made no ruling based upon such issue nor did respondent make such a claim. It appears respondent misconstrues appellant's contention because it is merely a conclusion of appellant that such is the *result* of the court's ruling, not that such was a contested issue.

Respondent vigorously contends that the instant case is squarely disposed of by *Texaco,* supra. Similar elements found in the instant case and *Texaco* are illustrated by respondent in its brief. In *Texaco,* the court was faced with determining the rights and obligations of the parties under a lease agreement pursuant to an action for declaratory judgment. The court had before it a lease which it concluded was ambiguous and was faced with the application of Kansas law. The terms of the lease in *Texaco* read, as follows:

"12

Option to Extend Term

(a) [lessee shall have the . . . . right and option to extend this lease for six successive periods of five years each at the following rental (omitted)"

"12(b)

If at any time during the term of this lease or any extension or renewal provided for herein, lessor shall receive a bona fide offer to lease the demised premises for a term to begin subsequent to the present demised term or such extension or renewal and the lessor desires to accept such offer, lessor will immediately submit to lessee a written copy of such proposed lease with a full disclosure of the terms and provisions thereof and lessee shall have thirty (30) days after receipt thereof in which to elect to lease said premises upon the same terms and provisions contained in such proposed lease."

The court in *Texaco* noted, as in the instant case, that the lease had been drawn and prepared by the lessee. The court in *Texaco* concluded, as did the trial court herein, that the renewal or extension options were conditioned upon and subject to the provisions of 12(b) quoted above.

This precise question has never been ruled in our state. The trial court herein adopted the rationale applied in *Texaco* and concluded:

"The defendant [appellant] argues in its memorandum that paragraph 35 grants to the tenant an additional right to the options of 32, 33, and 34. The defendant states, Page 9 of its memo, 'It grants the right for an additional term. Additional to what? Additional to the renewal terms which the tenant has the unlimited right to exercise pursuant to Paragraphs 32, 33, and 34' ".

The court's construction declared, "This contention conflicts with the clear wording of paragraph 35: "During TENANTS *occupancy under this lease or its renewal or extension . . ."* This phrase makes Paragraph 35 operable during the lease itself or any of its extensions. The only reasonable construction of Paragraph 35, when read with the entire lease, is that defendant's option to extend the lease is conditioned by Paragraph 35. The trial court herein then adverted to *Texaco,* particularly the reasoning at page 235, and concluded it controlled.

Appellant contends that *Texaco* is distinguishable from the case at bar because appellant herein had already exercised its option to renew and the lessee in *Texaco* had not. On the surface, such contention would appear to have merit. Respondent counters by arguing that the court in *Texaco* and the trial court herein noted that the option to renew or extend were qualified and conditioned. Respondent contends the rights of appellant under No. 32 above did not be-

come fixed until (1) notice to exercise the option was properly given (not disputed herein), and (2) the time during which respondent as landlord could receive a bona-fide offer from a third party had passed. This court concludes both from the reasoning of the *Texaco* decision and the intent and import of No. 35 that respondent's contention is correct. This court concludes that this is also what the trial court herein intended when it declared, ". . . the defendant's option to extend the lease is conditioned by Paragraph 35."

Appellant further contends that *Texaco* is distinguishable because the limiting provisions in *Texaco* [i.e., 12(b)] were contained in the same paragraph with the renewal option, whereas in the instant case, the lease contains four distinct and separate provisions and No. 35 arises only after Nos. 32 through 34 have been dispensed with. This court concludes that No. 35 does limit and qualify Nos. 32 through 34, and the fact that the provisions are set forth separately does not prohibit the application of No. 35 to the prior provisions. All of these provisions are to be read, interpreted, and construed together. We find that No. 35 limits and conditions Nos. 32 through 34, and that such finding, and not the particular sequence of the provisions within the lease, controls.

For the reasons set forth herein the judgment is affirmed.

WASSERSTROM, J., concurs.

KENNEDY, P.J., dissents without opinion.