**BRIDGESTONE/FIRESTONE, INC. v. WILMINGTON MALL REALTY CORP.**

[117 N.C. App. 535 (1995)]

---

BRIDGESTONE/FIRESTONE, INC. v. WILMINGTON MALL REALTY CORP.

No. 945SC39

(Filed 3 January 1995)

**Landlord and Tenant § 47 (NCI4th)— lease option— terms**

Plaintiff tenant, pursuant to the lease between the parties, had the option to renew the lease on the basis of the same rental rate as "for the original term," since the "fixed price" option

granted to the tenant controlled and was not conditioned or modified in any manner by the "first refusal" option in the lease.

**Am Jur 2d, Landlord and Tenant §§ 1160 et seq.**

Judge LEWIS dissenting.

Appeal by defendant from judgment entered 27 August 1993 in New Hanover Superior Court by Judge Ernest B. Fullwood. Heard in the Court of Appeals 28 September 1994.

*Marshall, Williams & Gorham, L.L.P., by John D. Martin, for plaintiff-appellee.*

*Murchison, Taylor, Kendrick, Gibson & Davenport, by Michael Murchison, for defendant-appellant.*

GREENE, Judge.

Wilmington Mall Realty Corporation (LANDLORD) appeals from a judgment entered in the Superior Court of New Hanover County, pursuant to a declaratory judgment action filed by Bridgestone/Firestone, Inc. (TENANT), granting TENANT the right to renew its lease for four successive five-year terms at the same rental rate as its original lease.

On 7 June 1972, TENANT entered a lease with Lat W. Purser and Ruth B. Purser to lease property in the Long Leaf Shopping Center in Wilmington, North Carolina. Sometime subsequent to the lease, the LANDLORD acquired title to the leased property. The lease, drafted by TENANT, extended from 1 June 1973 until 31 May 1993, and provided for a fixed rental rate during the twenty-year term. The lease provided the following renewal provisions:

33. RENEWAL TENANT shall have the right to renew or extend the within lease for a period of five (5) years following the expiration of the original term hereof, at a rental rate the same as for the original term hereof, and under the same terms and conditions as for the original term as set out herein, except for this option. In the event TENANT exercises this option to renew or extend, written notice thereof shall be given LANDLORD at least six (6) months prior to the commencement of such renewal or extension period.

[34-36 contain language identical to 33, but each provides that the right will become effective at the expiration of the renewed term under the respective, preceding paragraphs.]

37. FIRST REFUSAL TO LEASE. During TENANT's occupancy under this lease, or its renewal or extension, TENANT shall have first refusal option to lease the demised premises only for an additional term upon the same terms and conditions as contained in any valid, acceptable, bona fide lease offer LANDLORD, or any subsequent LANDLORD, may receive. TENANT shall have fifteen (15) days after receipt from LANDLORD of written notice of such offer (with certified full written statement of such offer or certified copy thereof) within which time to exercise said option and accept any such lease.

On 5 October 1992, prior to the expiration of the original term, the LANDLORD gave notice that it had received bona fide offers to lease the property from third parties, and its intention to relet the property at a higher rate. On 11 November 1992, before receiving any specific terms from the LANDLORD, the TENANT notified LANDLORD of its intention to renew the lease, on the original terms, under paragraph 33 of the lease. LANDLORD then filed this declaratory judgment action, seeking a determination of the parties respective rights under the lease. The trial court determined that the language in paragraph 37 of the lease was "not a limitation of the TENANT's rights, but . . . an extension of TENANT's rights" and declared that the TENANT was therefore entitled to renew the lease "under the same terms and conditions" as set forth in the original lease.

---

The sole issue is whether the lease gives the TENANT the option to renew the lease on the basis of the same rental rate as "for the original term."

The LANDLORD argues that the language in paragraph 37 of the lease "shows a clear intent of the parties to limit TENANT's rights under paragraph 33 through 36." Therefore, the LANDLORD contends, the TENANT, if it receives written notice from the LANDLORD of a bona fide third-party offer, can renew the lease for an additional term "only . . . upon the same terms and conditions" contained in the third-party offer. We disagree.

We have been unable to locate, nor have the parties cited, any North Carolina cases specifically addressing the issue presented in this appeal. There are cases addressing the effect of "right of first

refusal" and "fixed price" clauses in the context of *purchase* options and we believe they can be appropriately used to guide our decision in this *lease* option case. *E.g., Texaco, Inc. v. Creel*, 310 N.C. 695, 704, 314 S.E.2d 506, 511 (1984). In the *Texaco* case, our Supreme Court held that a lease agreement granting the lessee the right to purchase the leased property at a "fixed price" accompanied by a "right of first refusal" option entitles the lessee to purchase at the "fixed price" even if the lessee fails to meet a bona fide offer to purchase made to the lessor for a larger sum. The relevant provisions in the lease presented to the *Texaco* Court provided:

> (11)—Option to Purchase. Lessor hereby grants to lessee the exclusive right, at lessee's option, to purchase the demised premises, free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof,
>
> > (a) for the sum of *Fifty Thousand* dollars; it being understood that if any part of said premises be condemned, the amount of damages awarded to or accepted by lessor as a result thereof shall be deducted from such price,
> >
> > (b) On the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offeror, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase.

*Texaco*, 310 N.C. at 697, 314 S.E.2d at 507 (1984) (emphasis in original). The Court in evaluating the obvious conflict in the two provisions, noted that a Rhode Island Supreme Court opinion, *Butler v. Richardson*, 60 A.2d 718 (R.I. 1948), had concluded that the "fixed price" option provision controlled because it was "clear, explicit, and not coupled with or conditioned upon any other agreement." *Texaco*, 310 N.C. at 703, 314 S.E.2d at 510. The Court quoted with approval from the *Butler* opinion that the "first refusal" provision "has no effect whatever" upon the "fixed price" option and that the "fixed price" option "remains unimpaired." *Id.* Applying the principles of the *Texaco* case to this case, we hold that the "fixed price" option grant-

BRIDGESTONE/FIRESTONE, INC. v. WILMINGTON MALL REALTY CORP.

[117 N.C. App. 535 (1995)]

ed to the TENANT in paragraph 33 of the lease agreement controls and is not conditioned or modified in any manner by the "first refusal" option granted in paragraph 37 of the lease. Thus, the judgment of the trial court is

Affirmed.

Judge JOHNSON concurs.

Judge LEWIS dissents

Judge LEWIS dissenting.

I respectfully dissent. The majority relies on *Texaco, Inc. v. Creel*, and I do not believe that case is controlling here. In *Texaco*, the Supreme Court construed two provisions dealing with an option to purchase, not an option to renew or re-lease. Several aspects of the *Texaco* case serve to distinguish it from the case before us.

First, the Court in *Texaco* found it important that, by the terms of the lease, any option granted was "*continuing and pre-emptive*" and "*the failure of [the tenant] to exercise same in any one case shall not affect [the tenant's] right to exercise such option in other cases thereafter arising* during the term of this lease or any extension or renewal thereof. [Emphasis added.]" 310 N.C. at 700, 314 S.E.2d at 508-09. The Court agreed with the South Dakota Supreme Court that a proper interpretation of the lease would give effect to each provision in the lease. *Id.* at 703, 314 S.E.2d at 510. The Court further agreed that the quoted language would be nullified if the tenant's failure to meet a bona fide offer could result in a termination of the tenant's right to exercise the fixed price option. *Id.* at 703-04, 314 S.E.2d at 510-11. The lease in the present case, however, contains no such language.

Second, the Court based its conclusion in part on the fact that the continuing viability of the first refusal provision would be beneficial to the landlords in that it would allow them to induce the tenant to buy the property at a price lower than the fixed price, should the landlords no longer wish to have their asset tied up in a long-term lease. *Id.* at 705, 314 S.E.2d at 511. This analysis is not apposite to the case at hand, however, as the lease at issue in this case involves options to renew or re-lease, not options to purchase.

Finally, the Court in *Texaco* stated that it was probable that the landlords viewed the fixed price of $50,000 as being reasonable even at the end of the lease. *Id.* In this case, the majority's conclusion would, in effect, allow the tenant to lease the premises for forty years for the same monthly rental fee. I do not believe the landlord or any one else could view that proposition as reasonable. I believe that the result reached by the Missouri Court of Appeals in *Nigro v. Firestone Tire & Rubber Co.*, 641 S.W.2d 180 (Mo. Ct. App. 1982) should be followed in this case. In *Nigro*, the court was presented with a lease which contained virtually identical provisions to those at issue here, and which was drafted by the same tenant as in this case. In that case, the original term was for fifteen years and there were three consecutive renewal provisions. The final renewal provision was followed, as here, by the right of first refusal provision. The issue before the court was the same as that of this case. That court concluded that the tenant's rights under the renewal provisions were limited and conditioned by the first refusal provision. *Id.* at 186.

One key to the court's decision was the language in the first sentence of the right of first refusal provision, which began, "During Tenants occupancy under this lease, or its renewal or extension . . . ." This language made the first refusal provision operable during the term of the lease itself or any of its extensions. *Id.* at 185. The only reasonable construction of the first refusal provision, when read with the entire lease, was that the tenant's option to extend the lease was conditioned by the first refusal provision. *Id.* Thus, as the landlord contended, the parties intended the following: If the landlord received a bona fide offer to lease from a third party during the original term and the term under the offer was to begin at the end of the tenant's original term, the tenant had only one option and that was a first refusal option to lease the property as set out in the first refusal provision. *Id.* at 184. If no such other offer was received, then the tenant had the option of a five-year renewal under the first renewal provision. *Id.* If, during the renewal period, no bona fide offer was received, the same procedure would be followed. *Id.*

I believe the construction given the lease in *Nigro* is the proper one. I cannot agree with the majority's construction in the case at hand which, in effect, allows the tenant to lease the premises for forty years without an increase in rent. It is inconceivable that any business person, much less a freeholder or owner of real property such as the landlord, would make such a commitment. For the foregoing reasons, I respectfully dissent.