**UNITED STATES of America, Plaintiff,**

v.

**Eugene O. ABLES, d/b/a Gene Ables Excavation and General Construction Company, Inc.; Carl J. Privitera; Jerry Pritchard; Sellers Tractor Company, Inc.; and Gene Ables Excavation and General Construction Company, Inc., Defendants.**

Civ. A. No. 88–4073–S.

United States District Court,
D. Kansas.

May 3, 1990.

Benjamin L. Burgess, Jr., U.S. Atty., Connie R. DeArmond, Asst. U.S. Atty., for plaintiff.

Dan E. Turner, Phillip L. Turner, Topeka, Kan., for Ables.

Rene M. Netherton, Topeka, Kan., for Pritchard.

Lawrence P. Ireland, Topeka, Kan., for Sellers Tractor Co., Inc.

Stephen C. Caruso, Staab & Caruso, Carl J. Privitera, Kansas City, Mo., for Privitera.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the separate summary judgment motions of plaintiff United States of America ("United States"), defendant Jerry Pritchard ("Pritchard"), and defendant/intervenor Sellers Tractor Company, Inc. ("Sellers"). Plaintiff commenced this action in an attempt to recover collateral pledged as security for a note executed by Eugene O. Ables ("Ables"); Sellers and Pritchard claim prior interests in two particular pieces of property (a hydraulic excavator and a backhoe, respectively) already in the United States' possession pursuant to an attachment order in this case.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact ex-

ists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.,* 758 F.2d 1381, 1387 (10th Cir.1985). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing the absence of a genuine issue of material fact. This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues. The court must also consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

*Plaintiff's Summary Judgment Motion*

For purposes of the summary judgment motions presently before it, the court finds the following facts to be undisputed. On or about December 13, 1982, Eugene O. Ables, d/b/a Gene Ables Excavation Company, executed and delivered to the Highland Park Bank and Trust a promissory note in the sum of $500,000.00. On or about December 13, 1982, Eugene O. Ables, d/b/a Gene Ables Excavation Company, executed and delivered three security agreements to Highland Park Bank and Trust granting a security interest in *inter alia,* a full line of excavation machinery and equipment, as well as all such property interests acquired after the execution of security agreements and all additions and accessions thereto (hereafter referred to as the "Collateral Property").

On or about January 16, 1986, Highland Park Bank and Trust, for value received, assigned all its right, title and interest in and to the note and security agreements to the Small Business Administration ("SBA"). The security interest in the Collateral Property described above was properly filed and recorded under Kansas law. Under the terms of the promissory note and the security agreements, the holder of the note could declare all installments immediately due to take possession of the Collateral Property upon default of the debtor. Since May 13, 1985, Ables has been in default in his obligation under the note and the security agreements. As of January 11, 1988, Ables owes the principal sum of $418,722.26 on the note, plus accumulated interest of $135,082.08, for a total of $553,804.34. Interest continues to accrue on the principal balance at the rate of 12.5 per cent per annum, pursuant to the terms of the note.

Pursuant to an attachment order issued by this court, plaintiff has taken possession of a portion of the Collateral Property that it has, to date, been able to locate. Plaintiff contends that Ables is unlawfully detaining the remaining Collateral Property. Under the terms of the promissory note and security agreements executed by Ables, Ables is indebted to plaintiff for all costs incurred in recovery of the Collateral Property. Plaintiff further contends that as of October 18, 1989, plaintiff has incurred transportation, hauling, repair and storage costs in the amount of $25,306.53 in the course of recovering a portion of the Collateral Property, and that it continues to incur recovery costs in the form of storage costs at a rate of $36.00 per day. As of October 18, 1989, Ables is indebted to the United States in the sum of $25,306.53 for recovery costs, with additional recovery costs accruing at the rate of $36.00 per day.

In his response to the United States' summary judgment motion, Ables does not really dispute the United States' statement of the facts of this case; he merely suggests to the court that plaintiff's predecessor-in-interest had a "duty to mitigate" its damages. Ables' argument appears to be

that, in addition to its perfected secured interest in the Collateral Property at issue here, plaintiff's predecessor-in-interest had a perfected secured interest in Ables' accounts receivable, namely, in the proceeds of a certain SBA—Veterans Administration contract (hereafter, the "V.A. contract") on which Ables was the subcontractor; Ables basically (and vaguely) argues that the holder of the note should have availed itself of the opportunity to get the proceeds of the V.A. contract. On the questionable merits of Ables' argument, the court is unaware of any limitation on a secured party's right to pursue assets such as that suggested by Ables. Moreover, the court finds that these allegations, unsupported as they are by any evidence, are insufficient to create a factual dispute to defeat the United States' summary judgment motion. *See* Fed.R.Civ.P. 56(e); D.Kan. 206(c) (facts which are not specifically controverted are deemed admitted). The court will therefore grant the United States' motion for summary judgment, subject to the discussion below regarding the disputed items of collateral property, i.e., the hydraulic excavator and the backhoe.[1]

*Plaintiff's—Pritchard's Interests in the 266 Bantam Backhoe*

One of the items of Collateral Property presently in plaintiff's possession under the order of attachment is a 266 Bantam Backhoe, Serial # 6204753. The United States claims it is entitled to possession of the backhoe as within the after-acquired property clause of its security agreements with Ables, citing Rule 64 of the Federal Rules of Civil Procedure and the provisions of K.S.A. 60–1005 and K.S.A. 84–9–503. Pritchard claims that he is the lawful owner of the 266 Bantam Backhoe.

For purposes of the United States' and Pritchard's cross motions for summary judgment on the 266 Bantam Backhoe, the relevant facts are as follows. On December 13, 1982, Ables executed a promissory note in the amount of $500,000.00 to Highland Park State Bank and Trust. Ables also executed a security agreement granting Highland Park State Bank and Trust a security interest in "machinery and equipment (including automotive), furniture and fixtures, inventory and accounts receivable, proceeds arising therefrom, chattel paper, contract rights and general intangibles, however evidenced or acquired, now owned, purchased with loan proceeds and hereafter acquired, and all additions and accessions thereto." On January 16, 1986, all rights, titles and interest in the note and security agreements was assigned to SBA. Since May 13, 1985, Ables has been in default in his obligation under the note and security agreements.

In May 1987, SBA, in preparation for commencing a repossession action of its collateral due to Ables' default, conducted an inventory of all Collateral Property located at defendant's place of business. In the course of conducting the inventory, SBA observed a 266 Bantam Backhoe, without a serial number plate, located at defendant's place of business. SBA listed the 266 Bantam Backhoe as its Collateral Property in the May 1987 inventory. At no time during the May 1987 inventory or up to the commencement of this action, did Ables indicate to SBA that he was not the owner of the 266 Bantam Backhoe. During the May 1987 inventory, SBA took a picture of the 266 Bantam Backhoe for its files. John Walls, Commercial Loan Specialist for the SBA, observed Ables using the 266 Bantam Backhoe in the course of installing gasoline tanks on Interstate 70 at the Kansas Turnpike rest stop.

On August 3, 1988, pursuant to an order of attachment entered in this case, plaintiff took possession of the 266 Bantam Backhoe, which it located at 136th and Holmes, Kansas City, Missouri. At that time, the 266 Bantam Backhoe had no fuel lines or oil lines and the I.D. Serial Number plate and engine number plate were still missing. The 266 Bantam Backhoe repossessed by SBA on August 3, 1988, is the same 266 Bantam Backhoe observed and photographed by SBA at Ables' place of business

---

1. As defendant Carl Privitera has filed no response to the United States' motion for summary judgment, the court will grant summary judgment to plaintiff as to Mr. Privitera's claims, if any, to the collateral property which is the subject of this lawsuit. D.Kan. 206(g).

in May 1987. The 266 Bantam Backhoe, without serial number plate, remains in plaintiff's possession awaiting judgment in this case, at which time, plaintiff proposes to sell it, crediting the proceeds to Ables' debt.

In his December 14, 1988 deposition, Ables testified that he was purchasing a 266 Bantam Backhoe, Serial # 6204753, from Patricia Myers. According to Ables' deposition testimony, the purchase price of the backhoe was $16,000.00 and Ables paid approximately $100.00 in monthly cash payments while he was using the backhoe. When the backhoe was not in use, Ables kept the backhoe at his place of business or in a storage yard at 1020 East Highway 24 or at a storage yard located in Kansas City, Missouri. Ables stated that Myers did not use the backhoe herself. Ables further stated that his purchase agreement with Myers provided that there was no time limit within which Ables was required to complete the purchase and that Myers promised not to sell the 266 Bantam Backhoe to anyone else. Although Ables claimed that he had a written agreement with Myers for the purchase of the backhoe, he has not been able to produce a copy of this agreement.

■ In his motion for summary judgment, Pritchard claims that he is the lawful owner of the 266 Bantam Backhoe. In support of his claim, Pritchard attaches an exhibit (marked "Exhibit 4"), which purports to be a photocopy of a wire transfer from Pritchard's account payable to the Franklin Equipment Company in Irving, Texas "for 266 Bantam, Ser. No. 6204753, Pd. in full." Because the court, however, finds that Exhibit 4 is hearsay, and that Pritchard's motion for summary judgment does not comply with the requirements for supporting documents set out in Fed.R. Civ.P. 56(e), Pritchard's motion for summary judgment will be denied.

■ The remaining question before the court is whether the United States is entitled to summary judgment on its claim to the 266 Bantam Backhoe. The general validity of after-acquired property clauses in security agreements is recognized in K.S.A.

84–9–204. Under the Uniform Commercial Code as adopted in Kansas, a security interest becomes enforceable with respect to after-acquired property and attaches when: (1) the collateral is in the possession of the secured party or the debtor has signed a security agreement; (2) value has been given; and (3) the debtor has rights in the collateral. K.S.A. 84–9–203.

Plaintiff contends that the requirements of K.S.A. 84–9–203 have been met as follows: (1) Ables signed a security agreement in plaintiff's favor on December 13, 1982, which contained an after-acquired property clause; (2) plaintiff, as the assignee of Highland Park State Bank & Trust, gave value to Ables on December 13, 1982, by extending $500,000.00 in credit to Ables; and (3) Ables had rights in the collateral "as exemplified by his use of the Backhoe on the job site, his uninterrupted possession of the Backhoe, and his placement of the Backhoe at the location of his choice." Plaintiff therefore contends it is entitled to claim a perfected security interest in the Bantam Backhoe and is entitled, upon receipt of a judgment against Ables, to sell the Backhoe and to retain all proceeds of that sale. Pritchard claims that the after-acquired property clause in the security agreement (initially between Ables and Highland Park State Bank and Trust) can only reach whatever interest that Ables has in the 266 Bantam Backhoe, which Pritchard claims to be no interest at all.

Did Ables have sufficient rights in the 266 Bantam Backhoe to cause plaintiff's security interest in after-acquired property to attach to the backhoe, as required by K.S.A. 84–9–203? The phrase "rights in the collateral" is not defined in the Uniform Commercial Code. Although the Code does not require that a debtor have full ownership rights, *see Kinetics Tech. Int'l Corp. v. Fourth Nat'l Bank of Tulsa*, 705 F.2d 396, 398 (10th Cir.1983), it does require that the debtor have something more than "naked possession" under the rule that "you can't alienate what you don't own." K.S.A. 84–9–203, Kansas Comment 1983, at 417.

In this case, it is uncontroverted that Ables had exclusive use and possession of the 266 Bantam Backhoe when Ables' collateral was inventoried in May 1987 and when SBA took possession in August 1988. According to Ables' deposition, his period of use of the backhoe may have begun as early as 1985. Authority, control, and exclusive use of collateral placed in a debtor's possession is a highly relevant (and possibly determinative) factor in determining whether a debtor has "rights in the collateral" under 9–203. *See Kinetics Tech. Int'l Corp.*, 705 F.2d at 399 (construing the Oklahoma U.C.C. as allowing a security interest to attach when the debtor has a "degree of control or authority over collateral placed in the debtor's possession.") Further, Pritchard has not specifically controverted Ables' allegations that he had an agreement with Myers to lease, and eventually purchase (under an option contract) the backhoe. An agreement to purchase can give rise to sufficient rights in the debtor to allow a security interest to attach, regardless of whether the debtor has technically obtained title to the property. *See Kinetics*, 705 F.2d at 399. *See also* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* at 2–14. Under these undisputed facts, the court finds that Ables had sufficient rights in the 266 Bantam Backhoe for plaintiff's security interest to attach. Because the court finds that there are no genuine issues of material fact and because the United States is entitled to summary judgment as a matter of law, the court will grant plaintiff's motion for summary judgment with regard to the 266 Bantam Backhoe, Serial # 6204753.

### Plaintiff's—Sellers' Interests in the Hydraulic Excavator

The remaining disputed item of Collateral Property is the Koehring Model 6625 Hydraulic Excavator, Serial # 66442. Plaintiff United States and intervenor/defendant Sellers Tractor Company, Inc. ("Sellers") have both moved for summary judgment with respect to their conflicting claims for priority in the hydraulic excavator. The relevant facts for purposes of

determining priority in the hydraulic excavator are as follows. As noted above, on December 13, 1982, Ables executed and delivered to Highland Park Bank and Trust a $500,000.00 promissory note and three security agreements granting Highland Park Bank and Trust a security interest in Ables' excavation machinery and equipment, including after-acquired property. The security interest in the Collateral Property was properly filed and recorded under Kansas law; on or about January 16, 1986, Highland Park Bank and Trust assigned its rights in the note and agreements to SBA. Since May 13, 1985, Ables has been in default in his obligation under the note and security agreements.

On or about August 2, 1985, Sellers entered into an agreement with defendant Ables. The agreement, entitled "Purchase Order To: Sellers Tractor Company, Inc." calls for the purchase by Ables of a New Koehring Model 6625Y Hydraulic Excavator (hereafter, the "excavator"). The purchase order indicates that the total price of the excavator was to be $119,480.00. The "customer" agreed to pay: "Guaranteed 6 month Rental–Purchase $ $6950.00 per month + sales tax. 85% of all rent Paid applies to purchase." The "Terms and Conditions of Sale" appear on the other side of the purchase order. Sellers did not file a financing statement at the time it entered into the purchase order with Ables.

Sellers' contends that the August 2, 1985 agreement was not a sale, but rather a rental agreement with an option to purchase. Sellers maintained the same position in September 26, 1986 hearing before Judge Pusateri in a Chapter 11 bankruptcy proceeding filed by Ables. After hearing the parties' arguments, and after examining the purchase order, Judge Pusateri found that the agreement in question was properly characterized as a purchase agreement and security agreement. Judge Pusateri also stated that the August 2, 1985 agreement could be modified by subsequent agreements of the parties. On or about December 17, 1986, Sellers and Ables entered into a second agreement in which they agreed that the previous purchase or-

der was a lease agreement with an option to purchase the excavator and that the December 17, 1986 agreement constituted an exercise of the option to purchase by Ables. On January 2, 1987, Sellers filed a financing statement covering the excavator with the Secretary of State and with the Shawnee County Registrar of Deeds. SBA gave no permission to dispose, exchange, or sell the excavator. Plaintiff presently has possession of the excavator pursuant to a pre-judgment attachment order. Sellers intervened in this action, claiming that it holds a properly perfected security interest in the excavator, that it is entitled to priority over plaintiff's interest, and that it has the right to immediate possession of the excavator.

The issue before the court on the parties' cross-motions for summary judgment is "one of the most frequently litigated issues under the entire Uniform Commercial Code," i.e., whether Sellers' and Ables' transaction with regard to the hydraulic excavator, as reflected in the August 2, 1985 agreement, was a "bona fide lease" or an installment sale. J. White & R. Summers, *Uniform Commercial Code* at 878 (2d ed. 1980). The consequences of this difficult distinction are important: Article 9 does not apply to a "true" or "bona fide lease," and thus the lessor wins over the secured party. Article 9 of the Uniform Commercial Code does apply to any transaction, regardless of form, intended to create a security interest in personal property, which would include an installment sale. K.S.A. 84–9–102(1)(a). *See* B. Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* ¶ 1.5. The term "security interest" is defined at K.S.A. 84–1–201(37) as "an interest in personal property which secures payment or performance of an obligation." The definition further states the following:

> Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to

become the owner of the property for no additional consideration or for a nominal consideration does not make the lease one intended for security.

K.S.A. 84–1–201(37). The parties' intent, as primarily determined by reference to the contract, is the touchstone of the inquiry. *See In re Brookside Drug Store, Inc.*, 3 B.R. 120 (Bankr.D.Conn.1980).

■ The court finds that, on its face, the August 2, 1985 agreement is a contract for sale/security agreement; further, the agreement itself contains a merger clause, barring consideration of parol evidence regarding the parties' intent in this transaction. As a matter of Kansas law generally, construction of an unambiguous contract is a matter for the court; the intention of the parties is to be determined from the four corners of the instrument. *See, e.g., Kittel v. Krause*, 185 Kan. 681, 347 P.2d 269, 272–73 (1959). In this case, the August 2, 1985 agreement states that it is a "purchase order," and contains on its reverse side a security agreement. The purchase order quotes a total sale price for the excavator, and contains a charge for sales tax. The reverse side, entitled "Terms and Conditions of Sale and Security Agreement," passes the risk of loss to the customer (Ables) upon delivery and discusses warranties, including a disclaimer of implied warranties. *See* J. White & R. Summers, at 882 (discussing these factors as relevant to the characterization of an agreement as a lease or as a security agreement). The word "lease" is not mentioned in the agreement, nor is any lease term mentioned. The only possible reference to a rental arrangement is contained in the payment terms provision at the bottom of the form which states "Guaranteed 6 month Rental–Purchase @ $6950.00 per month + sales tax. 85% of all Rent Paid applies to purchase." The court finds this single reference insufficient to alter the characterization of the agreement when considered as a whole. Therefore, upon consideration of the unambiguous form of the parties' August 2, 1985 agreement as a contract for sale/security agreement, the terms of the transaction as expressed in that document,

and the "Code's abhorrence of secret liens," the court agrees with Judge Pusateri's assessment that this agreement is not a true lease, but rather is an installment sale with security agreement within the provisions of Article 9. The court therefore finds that plaintiff obtained a perfected security interest in the excavator on August 2, 1985, when Ables obtained rights in the collateral under the purchase order. *See* K.S.A. 84–9–203, K.S.A. 84–9–204. Further, plaintiff's security interest is prior to Sellers' security interest which was not perfected until Sellers filed its financing statement on January 2, 1987. K.S.A. 84–9–301.

██ The court further finds that, under K.S.A. 84–9–306(2), Sellers and Ables could not modify plaintiff's perfected security interest by the subsequent agreement of December 17, 1986 since that section provides that a security interest continues in collateral "notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party." It is undisputed that no such authorization was given in this case. Therefore, because there are no genuine issues of material fact and because the court finds that the United States is entitled to summary judgment as a matter of law, the court will grant the United States' motion for summary judgment against Sellers; accordingly, Sellers' motion for summary judgment will be denied.

IT IS BY THE COURT THEREFORE ORDERED that defendant Jerry Pritchard's motion for summary judgment is denied.

IT IS FURTHER ORDERED that intervenor/defendant Sellers Tractor Company, Inc.'s motion for summary judgment is also denied.

IT IS FURTHER ORDERED that the United States of America's motion for summary judgment against Sellers Tractor Co., Inc. is granted.

IT IS FURTHER ORDERED that the United States of America's motion for summary judgment against Jerry Pritchard is granted.

IT IS FURTHER ORDERED that the United States of America's motion for summary judgment is granted. Because a final judgment in this case must await disposition of the pending cross-claims of defendant Carl Privitera against defendant Ables and defendant Gene Ables Excavation and General Construction Company, Inc., plaintiff is directed to prepare and submit to the court within ten days of this order a journal entry for the court's approval with respect to its claims on which summary judgment has been granted.